Juan LOPEZ, Jr., Appellant,

v.

The STATE of Texas, Appellee.

Nos. 1032–94, 1033–94.

Court of Criminal Appeals of Texas,
En Banc.

Nov. 8, 1995.

Larry Glazner, Levelland, for appellant.

Gary A. Goff, District Attorney, Levelland, and Robert A. Huttash, State's Atty., Austin, for the State.

*OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

MANSFIELD, Judge.

Appellant pled guilty to two charges of aggravated robbery before a jury. The jury sentenced appellant to two concurrent life sentences in the Texas Department of Criminal Justice—Institutional Division. The court of appeals affirmed appellant's conviction. *Lopez v. State,* Nos. 07–93–0025 and 07–93–0026 (Tex.App.—Amarillo 1994) (unpublished).

After careful review of the petition for discretionary review and the opinion of the court of appeals, we have determined that appellant's petition for discretionary review was improvidently granted.

Appellant's petition for discretionary review is dismissed.

MALONEY, Judge, *dissenting.*

Appellant pled guilty to two aggravated robbery offenses and was sentenced by a jury to life imprisonment for each offense. The Court of Appeals affirmed appellant's convictions in an unpublished opinion. *Lopez v. State,* Nos. 07–93–0025CR & 07–93–0026CR slip op. (Tex.App.—Amarillo March 30, 1994). In his petition for discretionary review appellant claims the Court of Appeals erred in holding that the trial court was not compelled to empanel a jury to determine appellant's competency to stand trial. I dissent to the majority's improvident grant of appellant's petition.

I.

Prior to trial appellant's counsel filed a motion for a psychiatric evaluation of appellant to determine his competency. In that motion counsel stated that he believed appellant "may not be competent to stand trial in that [appellant] appears incapable of understanding the proceedings against him." Appellant also filed a *Motion for Hearing on Incompetency to Stand Trial,* which alleged, in part, that

Counsel has attempted to conduct interviews and discussions with Defendant since August of 1992. Defendant has not communicated adequately with or assisted counsel in the matters pertaining the case [sic] that is the subject of this prosecution. Defendant appears to have no rational or factual understanding of the proceedings against him.

Attached to the Motion was an affidavit in which appellant's counsel averred:

I am the attorney for Defendant ... I have counseled with the Defendant with respect to the facts, trial and consequences involved in the alleged offenses that he has been charged with ... From my personal contacts with the Defendant I have come to believe that he is not competent to stand trial and that he has not been competent for some considerable time.

I obtained the school records and psychiatric records of JUAN LOPEZ and learned that he was dismissed from school last year because he was deemed ineducable. With those records I studied a medical report dated April 24, 1990 from William H. Gordon, Jr., M.D. which states in relevant part "EEG shows posterior sharp and spike wave forms best seen on the right ... question of episodic dyscontrol." Such report also indicated that JUAN LOPEZ should be placed on medication.

From my personal contacts with the Defendant, the school record and the medical report by Dr. Gordon, I have the opinion that JUAN LOPEZ is not competent to stand trial and does not understand the process in which he is involved. I am also of the opinion that he has not been competent for some substantial period of time in the past.

The trial court appointed Dr. Preston Shaw to examine appellant for the purpose of determining his competency. Shaw examined appellant on one occasion. He concluded that appellant was competent to stand trial. In his general psychological evaluation of appellant, Shaw referred to a report dated January 5, 1988, which reflected that appellant's full scale IQ was 77. Shaw also noted that appellant's "thoughts were orderly and logical with no signs of thought distortion or delusion. No hallucinations were found." Shaw diagnosed appellant as having a "Mixed Personality Disorder including Anti-social Traits."

Thereafter, appellant hired clinical psychologist, Charles H. Mahone, Ph.D., to examine appellant for purposes of determining his rehabilitative potential. Mahone examined appellant on two occasions, noting that appellant "was alert and cooperative during the first interview, but depressed and lethargic on the second." Mahone's report stated that some months before the instant offense appellant began combining inhalants with LSD, and had since experienced hallucinations which he stated he had reported to no one. Mahone concluded that appellant is "neurologically impaired and psychotic." He further noted that although Shaw had found appellant competent to stand trial, that determination "was presumably made without knowledge of some important information." The information lacking from Shaw's report were indications of a substantially lower IQ than reflected in the report relied upon by Shaw and appellant's abuse of inhalants and hallucinogenic drugs. Mahone's test of appellant's IQ reflected a full scale IQ of 53. He stated that appellant's, "score falls clearly in the Retarded range of intelligence and it represents a striking deterioration from the intellectual levels reported in the ... 1988 assessment[ ]." He further noted that

In spite of the intellectual and perceptual impoverishment shown on the first two tests, [appellant] was able to complete some of the Sentence Completion Test items in a thoughtful and appropriate manner. This finding is congruent with my observations in interview [sic], especially my first interview, and with Dr. Shaw's interview comments. [Appellant] does have some verbal social skills which seem normal except when he is confused and distressed. He does not show normal reactivity, however, to his crime, his substance abuse, his impairment, and his incarceration. He definitely has impaired understanding and judgment on these matters.

Mahone concluded

It is my diagnostic impression that [appellant] has sustained neurological damage from the frequent and prolonged use of inhalants in an addictive manner over an indeterminant period of time.... This has produced in him an intellectually impaired and psychotic condition which is partially masked by flat emotionality, an agreeable and cooperative manner, and a thoughtful and seemingly realistic and factual interpersonal responsiveness. The latter characteristics are not consistent, however, and sometimes he shows great confusion and non-specific fear.

The record does not otherwise reflect discussion on the issue of appellant's competency until the rendering of appellants' plea. At that time, the trial court asked appellant's counsel whether he was of the opinion that appellant's plea was voluntary. Counsel responded:

I believe the decision by the Defendant is freely, voluntarily and knowingly entered into by him; however, for purposes of the record, it was my strong advise and guidance that I think persuaded him to enter this plea.... I think it is important for purposes of the record that I make it clear that I, in fact, have made all of the decisions in this case and I, in fact, made the decision for the Defendant to plead guilty.

Counsel further stated, however, that he was now "convinced that [appellant] is competent to stand trial and understands the nature of the proceedings today and knows what is going on and what he is doing."

## II.

Article 46.02 of the Code of Criminal Procedure provides, in part, that

> The issue of the defendant's incompetency to stand trial shall be determined in advance of the trial on the merits if the court determines there is evidence to support a finding of incompetency to stand trial on its own motion or on written motion by the defendant or his counsel filed prior to the date set for trial on the merits asserting that the defendant is incompetent to stand trial.

Tex.Code Crim.Proc.Ann. art. 46.02(2)(a). Further, if the issue of competency is raised "from any source" during the trial, the trial court must conduct a hearing and empanel a separate jury to determine the defendant's competency. *Id.* at 46.02(2)(b), 46.02(4).

The United States Supreme Court long ago recognized that conviction of an accused while legally incompetent violates due process. *Bishop v. United States*, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956); *see also Pate v. Robinson*, 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1965). Moreover, due process is violated if the evidence raises some doubt about a defendant's competency and a hearing is not held to determine the issue. *Robinson*, 383 U.S. at 385–86, 86 S.Ct. at 842–43. In assessing whether the evidence raises the issue, the court should look at the evidence that would support a finding of incompetency, rather than evidence to the contrary. *Id.* (mental alertness and understanding displayed at trial should not be relied upon to dispense with competency hearing in light of evidence of history of pronounced irrational behavior).

In *Sisco v. State*, 599 S.W.2d 607 (Tex. Crim.App.1980), this Court[1] held that in determining in advance of trial whether there is

evidence to support a finding of incompetency

> the trial court is to assay just that evidence tending to show incompetency, putting aside all competing indications of competency, to find whether there is some evidence, a quantity more than none or a scintilla, that rationally may lead to a conclusion of incompetency.

*Sisco*, 599 S.W.2d at 613. We further explained that "in determining whether the evidence raised the issue for submission, it must be viewed in the light most favorable to the party with the burden of securing the finding, disregarding contrary evidence and inferences. . . . [T]he question for the trial court is whether with respect to incompetency there is 'any' evidence or 'no' evidence." *Id.* at 612–13.

## III.

A summary of the evidence most favorable to appellant's position, "disregarding contrary evidence and inferences," shows that there is some evidence raising the issue of appellant's competency. Appellant's counsel initially considered appellant incompetent to stand trial and sought a competency hearing. In an affidavit counsel stated that from his contacts with appellant he had concluded that appellant "is not competent to stand trial and does not understand the process in which he is involved." Although the psychiatrist who examined appellant concluded that he was competent to stand trial, that psychiatrist noted that appellant's IQ was 77, based upon a test taken in 1988. The clinical psychologist who examined appellant, thought not making a competency evaluation, questioned the psychiatrist's findings and in particular noted that appellant's IQ score was 25 points lower than it was in 1988, and it was his opinion that the lower score was due to appellant's use of hallucinogenic drugs and inhalants, factors not known or considered by the psychiatrist. Appellant reported to the clinical psychologist that he had hallucinations, an occurrence he had reportedly not

---

**1.** *Sisco* was a panel opinion, in which one judge wrote the opinion, another judge concurred in the result and a third judge dissented. However, its holding has since been adopted by a majority of the Court. *Williams v. State*, 663 S.W.2d 832, 834 (Tex.Crim.App.1984) (holding *Sisco* standard applicable throughout article 46.02).

told anyone else. The clinical psychologist concluded that appellant had "impaired understanding and judgment" with regard to the instant offense, is "intellectually impaired and psychotic."

The Diagnostic and Statistical Manual of Mental Disorders defines "psychotic" in part as "gross impairment in reality testing and the creation of a new reality." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 404 (3rd ed. revised 1987). Further,

> When a person is psychotic, he or she incorrectly evaluates the accuracy of his or her perceptions and thoughts and makes incorrect inferences about external reality, even in the face of contrary evidence. The term *psychotic* does not apply to minor distortions of reality that involve matters of relative judgment.... The term *psychotic* is sometimes appropriate when a person's behavior is so grossly disorganized that a reasonable inference can be made that reality testing is markedly disturbed.

*Id.* If a defendant is impaired in his perception of reality such that he makes "incorrect inferences about reality, even in the face contrary evidence," it is questionable whether he has the ability to "consult with his lawyer with a reasonable degree of *rational understanding*" and possess a *"rational* as well as *factual* understanding of the proceedings against him." *See* Tex.Code Crim.Proc. Ann. art. 46.02(1)(a) (emphasis added). The lack of ability to make rational assessments about reality is a prominent characteristic of a psychotic person.

These facts amount to "a quantity more than none or a scintilla" that might rationally lead to a conclusion that appellant is incompetent to stand trial. *Sisco, supra.* Accordingly, I would find the Court of Appeals erred in holding the trial court was not compelled to empanel a jury to determine appellant's competency. A related issue raised in appellant's petition that warrants consideration is whether a defendant's request for a competency hearing can be waived or abandoned. The Court of Appeals held that appellant "abandoned" his request for a competency hearing when his counsel later stated he believed appellant was competent. Appellant argues in his brief that the trial court was obligated to put aside counsel's later statements in light of his earlier statements and the other evidence of incompetency. This issue is also worthy of our consideration. *See Robinson,* 383 U.S. at 384, 86 S.Ct. at 841 ("it is contradictory to argue that a defendant may be incompetent, and yet knowingly and intelligently 'waive' his right to have the court determine his capacity to stand trial"). For the reasons stated herein, I dissent to the majority's improvident grant of appellant's petition.

CLINTON, BAIRD and OVERSTREET, JJ., join.