**Billy Wayne McDANIEL, Appellant,**

v.

**The STATE of Texas on State's.**

**No. 744–02.**

Court of Criminal Appeals of Texas.

Feb. 26, 2003.

Kelly R. Myers, Corsicana, for Appellant.

Betty Marshall, Asst. State Atty., Matthew Paul, State's Atty., Austin, for State.

## OPINION

COCHRAN, J., delivered the opinion of the Court in which KELLER, P.J., and MEYERS, PRICE, WOMACK, HERVEY and HOLCOMB, JJ., joined.

This is a probation revocation case. Before the revocation hearing, appellant's counsel filed a "Motion for Examination

Regarding Incompetency," asserting there was "an issue" regarding appellant's competency and requesting appointment of an expert for competency testing. The question presented is whether the trial court was, on the basis of that motion, required to hold a competency inquiry prior to the revocation hearing.[1] We hold that a trial judge need not perform a "competency inquiry" unless evidence is presented that raises a bona fide doubt in the judge's mind regarding the defendant's "present ability to consult with [his] lawyer with a reasonable degree of rational understanding" or his "rational as well as factual understanding of the proceedings against [him]."[2] The Waco Court of Appeals held otherwise, concluding that the trial judge abused his discretion in failing to conduct a competency inquiry.[3] Thus, we reverse that court and reinstate the trial court's judgment.

## I.

In 1998, appellant pleaded guilty to the felony offense of bail jumping. The trial judge sentenced him to three years in prison, but suspended the sentence and placed him on community supervision. On March 13, 2001, the State filed a motion to revoke community supervision, alleging that appellant had violated his probation terms by: 1) failing to pay probation fees and court costs; and 2) making a terroristic threat.

Shortly thereafter, appellant's counsel filed a "Motion for Examination Regarding Incompetency," asserting that there was an "issue in this cause regarding whether Defendant is 'competent' to stand trial herein, as such term in defined by Section 1A of Article 46.02 of the Texas Code of Criminal Procedure."[4] He therefore requested appointment of a disinterested expert to examine appellant. Counsel further requested that the judge convene a jury competency hearing under Section 4 of Article 46.02,[5] "[i]n the event the Court determines that there is evidence to support a finding of incompetency." The trial

---

1. We granted the following grounds for review:
   1. The Court of Appeals erred in holding that the trial court should have conducted a competency inquiry before the defendant's probation revocation hearing because art. 46.02, § 2(a) of the Texas Code of Criminal Procedure applies only "in advance of the trial on the merits."
   2. The Court of Appeals erred in holding that the trial court should have conducted an art. 46.02, § 2(a) inquiry where the defendant did not request a § 2(a) inquiry, produce any evidence of incompetence, or complain about the lack of a § 2(a) inquiry in the trial court or on appeal.
   Because we conclude that the court of appeals erred in holding that any § 2(a) inquiry was required, we need not address the State's first ground for review. Thus, we dismiss it as improvidently granted.

2. *See* TEX.CODE CRIM. PROC. art 46.02 § 1A(a)(1) & (2).

3. *McDaniel v. State*, 72 S.W.3d 756, 760–61 (Tex.App.Waco 2002).

4. The record also contains a letter addressed to the trial judge from a man for whom appellant and his brothers had done some contract drilling work. The man urged the court not to send the sometimes "crazy" appellant, a manic-depressive, to prison, but rather to consider sending him to a secure treatment center. This fact, however, was not mentioned by the parties or the court of appeals, and thus it may never have been brought to the trial court's attention.

5. TEX.CODE CRIM. PROC. art. 46.02, § 4(a) provides, in pertinent part:

   If the court determines that there is evidence to support a finding of incompetency to stand trial, a jury shall be impaneled to determine the defendant's competency to stand trial. This determination shall be made by a jury that has not been selected to determine the guilt or innocence of the defendant....

judge appointed a psychologist, Dr. Paul Andrews, to examine appellant concerning his competency to stand trial.

The trial judge held the revocation hearing before Dr. Andrews conducted his competency examination. Appellant pled "not true" to the State's allegations and asked the judge to allow him to represent himself because he was dissatisfied with his court-appointed attorney. The judge granted appellant's request after a limited explanation as to the potential perils of self-representation, but ordered counsel to assist in the defense. The State called appellant's probation officer to testify that appellant had failed to pay his fines and court costs as alleged. Appellant adequately cross-examined the probation officer, who acknowledged that appellant had, in fact, made some of the required payments.

The State then called Woodrow Wilson Kelly to the stand, who testified concerning the alleged terroristic threat. He stated that appellant had telephoned him and said that "he [appellant] was going to come and kill my whore ass wife and kill me and take them kids where they won't be found." Appellant, in personally cross-examining Mr. Kelly, put forth his defense, which was that he never made any terroristic threat. Instead, he asserted that he had been "framed" by Mr. Kelly, who was having a relationship with his ex-wife. According to appellant, Mr. Kelly was scared that appellant would get his ex-wife back, thus Mr. Kelly wanted Appellant back in jail. It was only toward the end of the hearing, while the prosecutor was cross-examining him, that appellant raised the issue of his own incompetence, and then only by conclusory statements:

Q: Mr. McDaniel, do you understand and know what you're charged with here today?

A: I'm incompetent.

Q: I understand that. But you seem to know, I read the charge to you, did you understand it?

A: I'm a manic depressive.

Q: Okay.

A: I asked Mr.—

Q: I know you're trying to be crazy, but—

A: —hey, I asked Mr. Smith to make a motion for—

Q: Are you saying you don't know what you're charged with?

A: I'm saying I asked for a motion of competency hearing, what does that tell you, Mr. Counselor?

Q: I don't know. You seem pretty competent to me.

A: Did, did William—

Q: Have you been able to tell Mr. Smith what you wanted here today?

A: I can't confer with my lawyer in a reasonable degree to prepare me a defense.

Q: You certainly know what needs to be said, but have you given him a list [of prospective witnesses] as you testified to or was that a lie?

A: He didn't do nothing for me.

Q: Okay. But did you give him a list of witnesses that you wanted?

A: He ignored everything I told him.

Q: Okay. But you did tell him things you wanted done in your defense in this case.

A: I told him I felt like I wasn't able to confer with him in a reasonable manner and I would like a competency hearing.

Appellant then started talking to his attorney and the judge:

A: Did I tell you that, Mr. Smith? Did you make a motion for me a competency hearing like I asked?

Court: Yes, that motion has been made and is pending before the Court. You may step down.

A: Can I appeal that to a higher Court, 10th Court of Appeals for a competency hearing?

Court: I will deal with that issue later.

A: I am incompetent, [Judge] Jackson.

Court: I understand what you're telling me.

. . .

Court: I'll have a ruling and some comments at this time. I'll grant the Motion to Revoke Probation but I will defer sentencing pending an examination of the defendant on the issue of competency. It appears based on Mr. McDaniel's conduct of his own defense that he is competent. That's what it appears to me at least. I'm certainly willing to consider any report by a mental health care professional. I do find that he understands the nature, or it appears to me certainly at this time that he understands the nature of these proceedings and there appears to be, at least to me at this time, no question that he could, and has assisted counsel in his defense.

The Court finds that Mr. McDaniel has competently if not artfully handled his own defense in this case with the assistance of Mr. Smith, his appointed attorney.... [W]e'll be in recess in these proceedings pending examination.

Dr. Andrews examined Appellant on May 11, 2001. He filed his report, in which he concluded that appellant was competent, on May 30, 2001. The court held the sentencing hearing the next day. When the trial judge told appellant that Dr. Andrews had found appellant competent, appellant responded:

Appellant: Could I, could I ask you something?

Court: Yes, sir.

Appellant: I filed a motion that I get my own psychiatric evaluations.

Court: Well, I already, I've already appointed—

Appellant: I'm talking about by looking in the law books I have a right to my own psychiatric opinion, do I not? Yes or no?

Court: Well, I'm going to let you address that issue with your attorney and I'm going to proceed with sentencing at this time.... The defendant is sentenced to three years confinement.

Appellant then asked the judge why he was not evaluated until after the revocation hearing: "How was I put through a revocation hearing when my competency was in the balance on the 26th?" The court said that he should discuss the issue with his attorney.

On appeal, appellant argued that the trial court erred by not convening a jury competency hearing under article 46.02, § 4(a). Appellant contended that his motion requesting a competency examination by an expert, together with the events that occurred during the revocation hearing, were adequate to meet the "some evidence" threshold and so required a competency hearing before a jury.[6]

6. On appeal, appellant also complained that the trial court erred by not allowing him an opportunity to consult with his own expert when appellant raised that issue at the sentencing hearing. The court of appeals stated that "[o]n remand, McDaniel may renew such a request and the court 'shall provide the examiner with reasonable opportunity to examine the defendant' before conducting the Section 2(a) hearing." 72 S.W.3d at 761. We note that this motion, made after the trial court had already revoked appellant's proba-

In a 2–1 decision, the court of appeals held that the trial judge erred, but not for the reason appellant asserted. Although appellant did not raise the issue on appeal, the majority, citing article 46.02, § 2(a), reversed the trial court and held that appellant's written motion, which raised "an issue" of competency, required the trial court to conduct a "competency inquiry" before trial.[7] Thus, the court of appeals reasoned, the trial court should have determined if there was some evidence to support a finding of incompetency to stand trial, sufficient to warrant a Section 4(a) jury competency hearing.[8] Finding that the trial judge abused his discretion, the majority reversed the revocation order and remanded the case to the trial court for a Section 2 competency inquiry.[9]

The dissent noted that appellant himself recognized that he had not alleged incompetence until the end of the revocation hearing. It further observed that appellant never raised a bona fide doubt about his competency to stand trial, so that a Section 2 competency inquiry was not required, much less a Section 4(a) jury hearing. We, like the dissent, find that no formal competency inquiry was required.

## II.

In both Texas and the federal system, "[i]t has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial."[10] The conviction of an accused person while he is legally incompetent violates due process.[11] Thus, to protect a criminal defendant's constitutional rights, a trial court must inquire into the accused's mental competence once the issue is sufficiently raised.[12]

These due process standards are built into Code of Criminal Procedure article 46.02.[13] Under article 46.02 § 1A(a), "[a] person is incompetent to stand trial if the person does not have: (1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceed-

---

tion and was pronouncing sentence, was not timely as required by art. 46.02, § 3(h) ("[w]hen a defendant wishes to be examined by a psychiatrist or other expert of his own choice, the court *on timely request* shall provide the examiner with reasonable opportunity to examine the defendant") (emphasis added). *See, e.g., Wright v. State*, 28 S.W.3d 526, 532–33 (Tex.Crim.App.2000) (request for independent DNA expert made on first day of capital murder trial was untimely).

**7.** *McDaniel*, 72 S.W.3d at 760–61.

**8.** *Id.*

**9.** *Id.* at 761.

**10.** *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).

**11.** *Pate v. Robinson*, 383 U.S. 375, 378, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Lopez v.*

*State*, 909 S.W.2d 512, 514 (Tex.Crim.App. 1995).

**12.** *Pate v. Robinson*, 383 U.S. at 385, 86 S.Ct. 836.

**13.** "To adequately guard the right to a fair trial where evidence of the defendant's incompetence is raised during trial, our Legislature, consistent with the Supreme Court's opinion in *Pate* and with this Court's jurisprudence on the subject, adopted [art. 46.02] Section 2(b)." *Alcott v. State*, 51 S.W.3d 596, 599 (Tex.Crim.App.2001); *see also Johnson v. State*, 564 S.W.2d 707, 710 (Tex.Crim.App. 1977) (op. on reh'g) ("[b]y its enactment of Article 46.02(2)(b), the Legislature did not intend to enlarge upon *Pate v. Robinson* but sought to codify its holding as well as prior Texas case law").

ings against the person."[14] Article 46.02, § 2 provides:

(a) The issue of the defendant's incompetency to stand trial shall be determined in advance of the trial on the merits if the court determines there is evidence to support a finding of incompetency to stand trial on its own motion or on written motion by the defendant or his counsel filed prior to the date set for trial on the merits asserting that the defendant is incompetent to stand trial.

(b) If during the trial evidence of the defendant's incompetency is brought to the attention of the court from any source, the court must conduct a hearing out of the presence of the jury to determine whether or not there is evidence to support a finding of incompetency to stand trial.

The difference between Section 2(a) and Section 2(b) is the timing. In Section 2(a), the issue of competency is raised *before* trial, while under Section 2(b), the issue of competency is first raised at some point *during* the trial. Section 3 allows the court to appoint a disinterested expert, to order a competency examination, and to provide the defendant time to be examined by his own expert. Section 4 provides for the mandatory incompetency hearing before a jury if the court determines that "there is evidence to support a finding of

incompetency to stand trial." The remaining sections concern what happens when a defendant is found incompetent to stand trial.

Under our cases interpreting Section 2, the trial court must conduct a non-jury hearing, "a Section 2 inquiry," on whether to hold a jury trial on the defendant's competency "if evidence of the defendant's incompetency is brought to the attention of the court from any source."[15] A Section 2 or "competency inquiry"[16] is required only if the evidence brought to the judge's attention raises a bona fide doubt in the judge's mind about the defendant's competency to stand trial.[17] Evidence is usually sufficient to create a bona fide doubt if it shows "recent severe mental illness, at least moderate retardation, or truly bizarre acts by the defendant."[18] When such a bona fide doubt does exist, the court must conduct the Section 2 competency inquiry to determine whether there is "some evidence" to support a finding of incompetency, and, if so, to commence a Section 4 competency hearing before a jury. Thus:

1) if a competency issue is raised by the defendant, any party, or the court; and

2) evidence[19] of incompetency is brought to the attention of the trial court by the defendant, any party, or the court;

---

**14.** Tex.Code Crim. Proc. art. 46.02, § 1A(a).

**15.** *Collier v. State,* 959 S.W.2d 621, 625 (Tex.Crim.App.1997)(citing G. Dix & R. Dawson, Texas Criminal Practice and Procedure § 26.54 (1995)).

**16.** *See Alcott v. State,* 51 S.W.3d 596, 600–01 (Tex.Crim.App.2001)(refering to the preliminary section 2 competency hearing before the bench as a "competency inquiry," and reserving the term "competency hearing" for the section 4 hearing before the jury).

**17.** *Collier,* 959 S.W.2d at 625. Section 2(a) implicitly requires a "competency inquiry"

before trial whenever section 2(b) would require such a hearing during the trial. *Id.* at 625 n. 7 (citing Dix & Dawson, *supra,* § 26.454 at 720).

**18.** *Alcott v. State,* 51 S.W.3d at 602; *see also Collier,* 959 S.W.2d at 625; *Mata v. State,* 632 S.W.2d 355, 358 (Tex.Crim.App.1982).

**19.** This evidence need not be in admissible form. Reliable information that meets the standards of Tex.R. Evid. 104(a) suffices. Thus, for example, the defendant's attorney might orally recite the specific problems he has had in communicating with his client,

3) of the type to raise a *bona fide* doubt in the judge's mind regarding the defendant's competency to stand trial; then

4) the judge must conduct a Section 2 "competency inquiry" to determine if there is some evidence sufficient to support a finding of incompetence, and if there is,

5) the judge must impanel a jury for a Section 4 "competency hearing."[20]

The requirements of each step must be fulfilled before moving on to the next. The naked assertion, "I am incompetent," unsupported by any facts or evidence, is not sufficient, by itself, to require either a "competency inquiry" under Section 2 or a jury "competency hearing" under Section 4.

### III.

■ The court of appeals erred in holding that the trial court in this case should have conducted an art. 46.02, § 2 competency inquiry based on appellant's written motion which merely asserted that there was "an issue" about incompetency and requested an expert.[21] Appellant fulfilled step one, but when no evidence was brought to the trial court's attention to raise a bona fide doubt about his competency to stand trial, steps two and three were not satisfied.[22] As the dissent points out, appellant himself recognized that his motion merely requested an examination to determine competency; it did not specifically assert that he *was* incompetent, much less contain evidence of that purported incompetency. Neither that motion, nor the fact that the trial court ordered Dr. Andrews to examine appellant, sufficed, by themselves, to require the trial judge to hold a competency inquiry.[23]

In the court of appeals, appellant argued that, during the revocation hearing, suffi-

and the trial judge might consider the defendant's conduct or statements in court. In addition, hearsay letters or reports may be appropriately reliable evidence to consider at this stage. *See, e.g., Granados v. State,* 85 S.W.3d 217, 227 (Tex.Crim.App.2002).

20. *Alcott,* 51 S.W.3d at 599–601; *see also id.* at 602 (Price.J., concurring) ("[g]iven the fact that an inquiry is required to reach the hearing on the merits before the jury, the bona fide doubt standard must be a lower threshold than the evidence to support a finding standard"); *see also Marbut v. State,* 76 S.W.3d 742, 747–48 (Tex.App.-Waco 2002, pet. ref'd) (following *Alcott* in setting out appropriate steps and concluding that defendant failed to offer sufficient evidence to create a *bona fide* doubt of competency).

21. *McDaniel,* 72 S.W.3d at 760 (stating that "[t]he filing of this motion required the trial judge to conduct a competency inquiry, to determine whether to hold a section 4(a) competency hearing before a jury").

22. *See McWherter v. State,* 607 S.W.2d 531, 534 (Tex.Crim.App.1980)(motion suggesting that appellant was incompetent to stand trial

and requesting a psychiatric examination, which is not supported by evidence, is not sufficient evidence "to create a bona fide doubt" about appellant's mental competency to stand trial); *see also Ryan v. State,* 937 S.W.2d 93, 105 (Tex.App.-Beaumont 1996, pet. ref'd)("Although trial counsel filed a motion requesting a psychiatric examination for the purpose of determining whether Ryan was competent to stand trial, he never filed a written motion asserting Ryan was incompetent to stand trial. Thus, appellant was entitled to a pretrial determination of her competency only if the court acted on its own motion.").

23. *See Johnson v. State,* 564 S.W.2d at 710 (Tex.Crim.App.1978)(op. on reh'g)("the fact that psychiatric examinations are ordered by a court does not constitute a determination that an issue as to the defendant's competency exists").

To the degree that appellant now claims that his written motion was really a Section 46.02, § 2(a) motion, sufficient by itself to require a competency inquiry before the revocation hearing, he waived any purported error because he failed to object to the trial

cient evidence of incompetency was brought to the trial court's attention to require the judge to hold a competency inquiry under art. 46.02, § 2(b). He contended that the trial court had evidence of his "recent severe mental illness" and "truly bizarre acts" through Dr. Andrews' report, and his own behavior at the revocation hearing.

Having reviewed the record of the probation revocation hearing and sentencing, we do not believe that a bona fide doubt was raised about appellant's competency to stand trial. If anything, evidence which appellant now characterizes as indicating incompetence, actually indicated the opposite. First, Dr. Andrews reported that appellant told him that he wanted his attorney present during the examination because he could not keep from incriminating himself. When his attorney arrived, appellant handed him a stack of papers which he said contained questions to ask the witnesses he wanted to subpoena.[24] Dr. Andrews concluded:

> This man has a history of symptoms of and treatment for a major mental illness (Bipolar Disorder), a condition which no doubt at times compromises his ability to concentrate and to reason well. However, he showed no consistent indication of lack of ability to consult with his attorney (even requested the presence

of his attorney for a legitimate stated purpose). He also showed no consistent indication of failure of ability to comprehend factually and rationally the proceedings against him. Finally, the rather consistent attempts to "look bad" show an ability to establish and pursue a goal of self-defense even if not [an] indication of good judgment.

> In the opinion of this examiner, the defendant did not show credible indication of cognitive or emotional problems which would prevent him from being able to consult with his attorney if he wishes and to understand the proceedings against him.[25]

Appellant's history of mental illness was insufficient to create a bona fide doubt about his present mental condition, in light of the more recent psychological evaluation attesting to his mental competency.[26]

Second, as the trial judge stated, appellant "competently if not artfully handled his own defense in this case with the assistance of Mr. Smith, his appointed attorney." Appellant's testimony in his own behalf was articulate, logical, and reflected his understanding of the charges against him. "Such clear and lucid testimony on the part of a defendant has often been viewed as important in determining that he is competent to stand trial."[27] Appellant appropriately cross-examined two witnesses. He put the second witness, Mr.

court's proceeding with the revocation hearing. See Tex.R.App. P. 33.1; see also Carpenter v. State, 507 S.W.2d 794, 795 (Tex.Crim.App. 1974) (discussing waiver of pre-trial hearing on mental status issues when defendant fails to assert his right to such a hearing).

24.  Dr. Andrews also reported that appellant told him: "I feel like [defense counsel] is underpaid. He's court appointed. I feel like he's $20 an hour when he should be getting $120 an hour."

25.  Dr. Andrews' six page report sets out appellant's background information, noting that

"this defendant is well known to the Court," his prior arrests, education, history of Bipolar Disorder, and certain incidents while previously in prison. Dr. Andrews outlined his behavorial observations during the clinical interview, his mental status examination of appellant, and the various psychological and cognitive testing procedures he had employed which formed the basis of his expert opinion.

26.  See *Johnson*, 564 S.W.2d at 711–12.

27.  *Id.* at 712; *see also Zapata v. State*, 493 S.W.2d 801, 803 (Tex.Crim.App.1973); *Quintanilla v. State*, 508 S.W.2d 647, 650 (Tex.

Kelly, through the wringer, impeaching him with "isn't it true" questions, and having Mr. Kelly admit, at one point, that the threatening call could have been just somebody else "playing a joke." Appellant understood enough about the proceedings against him to mount a reasonable defense and to present Mr. Kelly's purported motive for lying about the threat. Even in arguing his own incompetence, appellant demonstrated his understanding of the proceedings against him. He understood the standard for competence, telling the court "I can't confer with my lawyer in a reasonable degree to prepare me a defense." And he understood his right to appeal, and the specific "higher Court" to which he would appeal—the "10th Court of Appeals." He knew, from "looking in the law books" that he had some right to consult with his own psychiatric expert. We cannot ignore the trial court's first-hand factual assessment of appellant's mental competency. His factual findings, that appellant understood the nature of the proceedings and assisted his counsel in his defense, are entitled to great deference by the reviewing court.[28]

Under these facts, the trial court did not err in failing to hold a formal competency inquiry or a jury competency hearing. Therefore, we reverse the court of appeals and affirm the trial court's judgment and sentence.

JOHNSON and KEASLER, JJ., concurred in the judgment.

Crim.App.1974); *Perryman v. State*, 507 S.W.2d 541, 544 (Tex.Crim.App.1974).

28. *See, e.g., Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997) (stating that "as a general rule, the appellate courts, including this Court, should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor").