

**NUMBER 13-07-739-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI ‑ EDINBURG**

---

**RICHARD HUFF,**                                                                                      **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                              **Appellee.**

---

**On appeal from the 319th District Court
of Nueces County, Texas.**

---

## MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Vela
Memorandum Opinion by Justice Vela**

Appellant, Richard Huff, pleaded no contest without the benefit of a plea-bargain agreement to the offense of aggravated assault with a deadly weapon. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (Vernon Supp. 2008). After finding that Huff had been previously convicted of one felony offense, the trial court assessed punishment at fifty years'

imprisonment. Huff brings two issues for review. We affirm.

## I. BACKGROUND

Huff was indicted on February 15, 2007, for committing aggravated assault by stabbing his wife, Robin Huff, with a knife. On May 1, 2007, Huff's defense counsel filed a motion for a mental examination and a pretrial hearing on his competency to stand trial. Afterward, the trial court ordered Huff to undergo a psychiatric examination with Raul Capitaine, M.D., a forensic psychiatrist, to evaluate his competency to stand trial. On June 13, 2007, Dr. Capitaine filed a written report which showed that Huff had a mental illness since he was fourteen years old and was hospitalized several times per year for mental illness until age twenty-six. He was last hospitalized in January 2006. Dr. Capitaine diagnosed Huff with "Bipolar 1 Disorder. Most Recent Episode Mixed. Severe with Psychotic Features" and "Polysubstance Abuse, in remission in a controlled environment." Dr. Capitaine found Huff competent to stand trial and found no evidence of mental retardation.

Huff's plea hearing occurred on November 27, 2007, at which the trial court asked Huff, among other things, if he signed and initialed all of the plea paperwork, if he signed the plea papers freely and voluntarily, and if he understood that by entering his plea, he was giving up his right to a jury trial. Huff affirmatively answered these questions. Huff pleaded "No contest" to the allegation in the indictment and pleaded "True" to the allegation that he had a prior felony conviction. Huff affirmed that he was entering his pleas freely and voluntarily and that he understood that the judge could find him guilty. When the trial court asked defense counsel if he believed that Huff was mentally competent to appear in court and enter the pleas, counsel stated, "[I]t is my opinion that he has dramatically improved since February of this year [2007], and it is my opinion he's been able to assist

2

me in preparation for today's hearing. I believe he is competent to stand trial at this time." The trial court accepted the pleas, received Huff's judicial confession and stipulation into evidence, and heard testimony.

The victim testified that on the morning of February 9, 2007, while driving Huff to do laundry, Huff asked if she wanted a divorce. Before she could reply, he told her, "I'll end this whole thing right here. I will slit your throat and kill you.'" He pulled out a knife and told her to pull over. When she pulled over, Huff started stabbing and choking her. She then heard Huff call 9-1-1. He stabbed her eleven times on her chest, neck, and back.

Huff testified that he had been mentally ill since the age of fourteen and was hospitalized two or three times a year until the age of twenty-six when he realized that he needed to take his medication in order to "function." When defense counsel asked him about the stabbing of Robin, Huff responded that he "[J]ust got out of control." He said that after he saw what had happened, he called 9-1-1. He denied choking her.

After hearing all of the testimony, the judge found Huff guilty, found the enhancement allegation to be true, and assessed punishment at fifty years' imprisonment.

## II. DISCUSSION

By his first issue, Huff argues that the trial court violated his Due Process rights under the Fourteenth Amendment to the United States Constitution by not holding a hearing when evidence sufficient to raise a bona fide doubt concerning his competency to stand trial became evident. We apply an abuse-of-discretion standard when reviewing a trial court's failure to conduct an inquiry into a defendant's competency to stand trial. *Montoya v. State*, No. PD-0239-08, 2009 WL 1873354, at *5 (Tex. Crim. App. July 1, 2009). In applying this standard, "An appellate court does not substitute its judgment for that of the trial court, but rather determines whether the trial court's decision was arbitrary

3

or unreasonable." *Id*.

*A. Applicable Law*

The code of criminal procedure prohibits a trial court from accepting either a guilty plea or a plea of *nolo contendere* "unless it appears that the defendant is mentally competent. . . ." TEX. CODE CRIM. PROC. ANN. art. 26.13(b) (Vernon 2009). A defendant must also be mentally competent to be sentenced. *See Casey v. State,* 924 S.W.2d 946, 949 (Tex. Crim. App. 1996) (stating that sentencing is part of trial and competency considerations apply). Under article 46B.004 of the code of criminal procedure,[1] a trial court's inquiry into a defendant's competence may be informal. *Montoya,* 2009 WL 1873354, at *4. This allows the trial court to informally determine whether the defendant's behavior during a proceeding indicates a lack of rational understanding. *Id*. The *Montoya* court stated that bona fide doubt is "the proper standard for determining whether a trial court should conduct an inquiry." *Id*. If a trial court has a bona fide doubt about the defendant's competency, it "shall conduct an informal inquiry to determine if there is evidence that would support a finding of incompetence." *Id*. "A bona fide doubt may exist if the defendant exhibits truly bizarre behavior or has a recent history of severe mental

---

[1]Article 46B.004 provides:

(a) Either party may suggest by motion, or the trial court may suggest on its own motion, that the defendant may be incompetent to stand trial. A motion suggesting that the defendant may be incompetent to stand trial may be supported by affidavits setting out the facts on which the suggestion is made.

(b) If evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the court, the court on its own motion shall suggest that the defendant may be incompetent to stand trial.

(c) On suggestion that the defendant may be incompetent to stand trial, the court shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial.

TEX. CODE CRIM. PROC. ANN. art. 46B.004 (Vernon 2006).

4

illness or at least moderate mental retardation." *Id*.

Article 46B.003 provides that a person is incompetent to stand trial if the person does not have: "(1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person." TEX. CODE CRIM. PROC. ANN. art. 46B.003(a)(1) (2) (Vernon 2006). This statute "specifies the defendant's *present* ability. . . . [P]ast mental-health issues raise the issue of incompetency only if there is evidence of recent severe mental illness, at least moderate retardation, or bizarre acts by the defendant." *Montoya,* 2009 WL 1873354, at *4 (emphasis in original); *see Moore v. State,* 999 S.W.2d 385, 395 (Tex. Crim. App. 1999).[2] "The considerations when evaluating competency to stand trial include the defendant's level of understanding of the proceeding and ability to consult with counsel in preparation for the proceeding." *Montoya,* 2009 WL 1873354, at *4. "Thus, those who observed the behavior of the defendant at the hearing . . . [are] in a better position to determine whether . . . [the defendant is] presently competent." *Id*.; *see McDaniel v. State*, 98 S.W.3d 704, 713 (Tex. Crim. App. 2003) (stating "We cannot ignore the trial court's first-hand factual assessment of appellant's mental competency. His factual findings, that appellant understood the nature of the proceedings and assisted his counsel in his defense, are entitled to great deference by the reviewing court.").

---

[2]In *Moore*, the court stated:

> Prior hospitalization . . . do[es] not *per se* warrant the court impaneling a separate jury to conduct a competency hearing. To raise the issue of competency by means of the defendant's past mental health history, there generally must be evidence of recent severe mental illness or bizarre acts by the defendant or of moderate retardation.

*Moore v. State*, 999 S.W.2d 385, 395 (Tex. Crim. App. 1999).

5

*B. Analysis*

Dr. Capitaine found Huff competent to stand trial. Furthermore, the record reflects no indication of recent severe mental illness, moderate retardation, or truly bizarre acts, and there was no suggestion by Huff's defense counsel, the prosecutor, or the trial court, all of whom saw Huff's behavior at the plea hearing, that Huff appeared unable to understand the proceedings. The record showed that Huff had the sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and had a rational as well as a factual understanding of the proceedings against him. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.003(a)(1) (2). Giving proper deference to the trial judge's determination based on his ability to see Huff's behavior, we conclude that because evidence did not come to the trial court's attention suggesting that Huff may have been incompetent to stand trial, the trial court did not abuse its discretion by failing to determine by informal inquiry whether there was some evidence from any source that would support a finding that Huff was incompetent to stand trial. *See Montoya v. State*, No. PD-0239-08, 2009 WL 1873354, at *5 (Tex. Crim. App. July 1, 2009). Issue one is overruled.

By his second issue, Huff argues his right to a proper determination of his incompetency to stand trial was violated because the trial court failed to follow the mandatory procedures of Chapter 46B of the code of criminal procedure once evidence suggesting he was incompetent to stand trial came to the trial court's attention. If, after an informal inquiry, the court determines that evidence exists to support a finding of incompetency, the court shall order an examination to determine whether the defendant is incompetent to stand trial. *Id*. art. 46B.005(a) (Vernon 2006). Generally, if the court determines that evidence exists to support a finding of incompetency, the court shall hold a hearing before determining whether the defendant is incompetent to stand trial, and, on

6

the request of either party or on the court's motion, a jury shall make the determination with respect to whether the defendant is incompetent. *Id.* arts. 46B.005(b), 46B.051. (Vernon 2006).

Here, the trial court ordered an examination to determine whether Huff was incompetent to stand trial. Dr. Capitaine evaluated Huff and determined that he was competent to stand trial. Because evidence did not come to the trial court's attention suggesting that Huff may have been incompetent to stand trial, the trial court did not violate the mandatory procedures set forth in chapter 46B of the code of criminal procedure. Issue two is overruled.

### III. CONCLUSION

The trial court's judgment is affirmed.

ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this 20th day of 2009.