COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
|---|---|---|
| PATRICK SHANE WELCH, | § | No. 08-14-00116-CR |
| Appellant, | § | Appeal from the |
| v. | § | 97th Judicial District Court |
| THE STATE OF TEXAS, | § | of Clay County, Texas |
| Appellee. | § | (TC# 2012-0053C-CR) |
| | § | |

## **O P I N I O N**[1]

Patrick Shane Welch appeals the trial court's judgment revoking his deferred adjudication community supervision and sentencing him to 25 years' imprisonment. In three issues, Welch contends that the trial court erred by: (1) failing to inquire into his competency at the revocation and sentencing hearings "[d]espite overwhelming evidence of [his] incompetence" (Issues One and Two); and (2) prohibiting him from presenting evidence before sentencing (Issue Three). We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Welch was arrested for assaulting his father and stealing from him. Before any charges were filed against Welch, the trial court ordered that he be evaluated for the purpose of

---

[1] This case was transferred to this Court from the Second Court of Appeals pursuant to an order issued by the Supreme Court of Texas. *See* TEX.GOV'T CODE ANN. § 73.001 (West 2013).

determining his competence to stand trial. The examining psychiatrist concluded that Welch was mentally ill and incompetent to stand trial but, with appropriate treatment, training, and medication, would regain his competency "in the foreseeable future."

Approximately six months later, Welch was formally charged with the offense of aggravated robbery. *See* TEX.PENAL CODE ANN. § 29.03 (West 2011). One month thereafter, Welch entered a negotiated guilty plea in which he averred that he:

> [Was] presently competent to stand trial and [had] a sufficient present ability to consult with my lawyer with a reasonable degree of rational understanding and [had] a rational as well as factual understanding of the proceedings against me.

The trial court accepted Welch's plea and placed him on deferred adjudication community supervision for five years. Approximately six months later, the State moved to adjudicate Welch's guilt. But before proceeding on the motion, the State requested that Welch again be evaluated for the purpose of determining his competency. The trial court acceded and appointed the psychiatrist who previously examined Welch. This time, she concluded that Welch was competent to stand trial because his mental illness was in remission due to the high doses of medication he was receiving in jail. But she warned that Welch had to "remain on a high dose of antipsychotic medications in order for him to remain mentally competent." Welch's subsequent behavior in jail prompted his counsel to request that the trial court hold a hearing to determine the issue of competency and order another examination. At the hearing on the motion, the trial court considered the testimony of three witnesses. Welch acknowledged that the purpose of the hearing was to determine his competency to stand trial, and he revealed that he was receiving and taking his medication regularly. When asked by counsel if his failure to take medication causes him "problems with understanding things[,]" Welch responded that he experienced nothing more than

2

"simple anxiety and irritab[ility]." On cross-examination, Welch was adamant that he became irritably anxious, not mentally incompetent, when failing to take his medication. He further denied the allegation that, while on community supervision, he was hearing voices telling him to kill people. The State's two witnesses did not dispute the notion that Welch was receiving and taking his prescribed medication on a consistent—albeit not daily—basis. And each one testified that, to his knowledge, Welch was competent when medicated. The trial court found Welch competent.

A few weeks thereafter, the State filed an amended motion to adjudicate, which the trial court heard fifteen days later. When the hearing began, Welch stated that he had been served with the motion but had not discussed it in depth with his attorney. In response, the trial court halted the hearing to permit Welch to confer with his attorney. When the hearing resumed, Welch acknowledged that he had conferred with his attorney and apologized to the trial court for not having remembered that he had previously spoken to his attorney. Welch volunteered that he thought he had that particular conversation with another attorney, which he mistook to be the probation officer standing next to him. The trial court then asked Welch whether he was the same individual who had pled guilty and received deferred adjudication community supervision. Welch responded that he was. Thereafter, the trial court asked Welch whether he wanted the motion read aloud to him or whether he waived the reading of it. Welch responded by stating that he "didn't understand what you're -- what you're talking about the waive or -- to what those are." He expounded further:

> I'm just like -- I'm sorry. I'm in detail. I'm not quite fully understanding what you're talking about. Because I was going to talk to you about something, what's going on. I wasn't on my medicine. It's not on my charge. I may be off on exactly what you're talking about, but – you know, because I don't want to go with

3

what he says and then -- and then not be able to explain. You know what I'm saying, what happened with my charge. I'm kind of trying to grasp it. I don't have too much court experience. And so you need to pretty much take that up with Randall [his attorney] or do I need to keep going with what I'm talking about or -- I don't quite understand the waive or what -- before you're talking -- before the waive, what you're talking about there.

The trial court informed Welch that the motion would be read aloud to him. At that point, Welch came to the realization that the motion related to "the revoke of probation or the adjudication of guilt" rather than his original charge and assured the trial court that he "underst[ood] what you're talking about."

After the allegations were read to him, Welch implored the trial court for the following alternative to revocation: "time served, more probation hours, community service." The trial court permitted Welch to explain his actions concerning the events surrounding the charged offense and then asked him how he pled to the allegations in the motion. Welch pled true to three of the five allegations. The State then proffered the testimony of three witnesses, two of whom had testified at the hearing to determine Welch's competency. With respect to the issue of Welch's mental illness, each witness testified that Welch was receiving medication, but none could state with certainty whether he was taking it. After considering the witnesses' testimony, the trial court found true four of the five allegations but postponed sentencing until the completion of a presentence report. Welch then asked, "So, like, what is exactly is going on here? 1:30?" His attorney told him that they would return on another day for sentencing.

The sentencing hearing took place twenty-eight days later, and it was a brief affair. After ascertaining that Welch's counsel had no objection to the presentence report, the trial court revoked Welch's community supervision and adjudged him guilty. The trial court then entertained arguments concerning punishment. Welch's counsel simply reminded the trial court

4

of Welch's mental illness:

> Just the fact that most of the problem here has come from the mental problems that my client has and the medication lapses that he's had and we just ask the Court to consider that.

The trial court assessed punishment at twenty-five years' imprisonment and proceeded to ask counsel if there was "any reason why sentence should not now be imposed." Counsel answered "No, Your Honor[,]" and the trial court formally sentenced Welch. Upon hearing his sentence, Welch asked "Are y'all saying that I'm going into a hospital?" When the trial court reiterated that he was being imprisoned, Welch went on a tirade about, among other matters, attempts to poison him while jailed, instances of not receiving medication from jailers, and narratives of his encounters with his father. During these rants, Welch remarked repeatedly with great clarity and elucidation that he "can't go to prison for twenty-five years for a violation of probation." When he finished, Welch asked the trial court, "What's going to happen? What's going on?" The trial court explained to Welch that he had been adjudged guilty and sentence to twenty-five years' imprisonment. Welch again expressed his outrage at the length of his sentence and offered the following alternative:

> Is there any way of getting a five-year deal where I get out in five years and get parole? I don't know. Is there stuff like that? If someone got me a lawyer, could they work something out, you think?

The trial court reminded Welch that he had a trial counsel but proceeded to appoint appellate counsel for him. After Welch commented that "[t]his isn't right" and demanded that someone help him, the trial court concluded the hearing.

**COMPETENCY**

In his first and second issues, Welch contends that the trial court erred by failing to inquire

5

into his competence at his adjudication and sentencing hearings because there was "overwhelming evidence" he was incompetent during those hearings.   We disagree.

### Standard of Review

We review the type of complaint raised by Welch for an abuse of discretion.   *See Montoya v. State*, 291 S.W.3d 420, 426 (Tex.Crim.App. 2009).   A trial court's assessment of a defendant's mental competency is entitled to great deference by a reviewing court.  *McDaniel v. State*, 98 S.W.3d 704, 713 (Tex.Crim.App. 2003).   We will not substitute our judgment for that of the trial court; rather, we will determine whether the trial court's decision is arbitrary or unreasonable. *See Montoya*, 291 S.W.3d at 426 (noting that trial court is "in a better position to determine whether [the defendant] was presently competent").

### Applicable Law

A defendant has a constitutional due-process right to be competent throughout all stages of his trial, including at revocation and sentencing hearings.  *Turner v. State*, 422 S.W.3d 676, 688-89 (Tex.Crim.App. 2013); *Reeves v. State*, 46 S.W.3d 397, 399 (Tex.App.--Texarkana 2001, pet dism'd).   A defendant is presumed competent to stand trial unless proved otherwise by a preponderance of the evidence.   TEX.CODE CRIM.PROC.ANN. art. 46B.003(b)(West 2006).   A defendant is incompetent to stand trial if he lacks:   (1) the ability to reasonably communicate with counsel; or (2) a rational and factual understanding of the proceedings against him.   *Turner*, 422 S.W.3d at 689 & n.20, *citing* TEX. CODE CRIM.PROC.ANN. art. 46B.003(a)(1), (2).

Pursuant to Chapter 46B.004, "[i]f evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the court, the court on its own motion shall suggest that the defendant may be incompetent to stand trial."   TEX.CODE CRIM.PROC.ANN. art. 46B.004(b)(West

6

Supp. 2014). The existence of such evidence triggers an informal inquiry to determine whether there is some evidence from any source supporting a finding of incompetence. *Turner*, 422 S.W.3d at 691-92 & n.30, *citing* TEX.CODE CRIM.PROC.ANN. art. 46B.004(c). "Evidence suggesting the need for an informal inquiry may be based on observations made in relation to one or more of the factors described by Article 46B.024 or any other indication that the defendant is incompetent within the meaning of Article 46B.003." TEX.CODE CRIM.PROC.ANN. art. 46B.004(c-1). The factors described by Article 46B.024 are ones an expert must consider when evaluating a defendant for the purpose of determining his competency to stand trial. TEX.CODE CRIM.PROC.ANN. art. 46B.024 (West Supp. 2014). They are:

(1) the capacity of the defendant during criminal proceedings to:

    (A) rationally understand the charges against the defendant and the potential consequences of the pending criminal proceedings;

    (B) disclose to counsel pertinent facts, events, and states of mind;

    (C) engage in a reasoned choice of legal strategies and options;

    (D) understand the adversarial nature of criminal proceedings;

    (E) exhibit appropriate courtroom behavior; and

    (F) testify;

(2) as supported by current indications and the defendant's personal history, whether the defendant:

    (A) is a person with a mental illness; or

    (B) is a person with an intellectual disability;

(3) whether the identified condition has lasted or is expected to last continuously for at least one year;

(4) the degree of impairment resulting from the mental illness or intellectual

disability, if existent, and the specific impact on the defendant's capacity to engage with counsel in a reasonable and rational manner; and

(5)   if the defendant is taking psychoactive or other medication:

(A)   whether the medication is necessary to maintain the defendant's competency; and

(B)  the effect, if any, of the medication on the defendant's appearance, demeanor, or ability to participate in the proceedings.

TEX.CODE CRIM.PROC.ANN. art. 46B.024(1)-(5).

### *Discussion*

The trial court had no obligation to conduct an informal competency inquiry because the record does not suggest that Welch was incompetent at his adjudication and sentencing hearings.

There was no evidence suggesting Welch lacked a rational and factual understanding of the proceedings against him or the ability to consult his attorney with a reasonable degree of rational understanding on the days in question.   In fact, the record indicates the contrary.   With regard to Welch's ability to consult his attorney with a reasonable degree of rational understanding on the days in question, neither Welch nor his attorney informed the trial court that Welch was unable to participate in his defense, and no witness intimated as much in his testimony.   That Welch and counsel conferred for an hour at the adjudication hearing to discuss the State's motion to adjudicate without apparent difficulty in communicating shows that Welch had the ability to rationally confer with counsel.   As for whether Welch had a rational and factual understanding of the proceedings against him, we note that defense counsel never complained to the trial court that Welch did not understand the proceedings and that no witness offered any testimony, directly or indirectly, on the issue.   Although Welch ranted and raved and professed confusion and lack of understanding at certain points of the proceedings—particularly at those points where he faced

8

adversity and experienced hardship, *i.e.*, having to plead to the allegations in the State's motion to adjudicate, having his community supervision revoked, and being adjudicated guilty and sentenced to twenty-five years' imprisonment—it is evident that he understood the adversarial nature of the proceedings against him and was able to participate in them meaningfully. This is demonstrated by his assurances to the trial court that he understood the State was seeking adjudication, his cogent pleas of true to some of the State's allegations, his exhortations for leniency, and his indignation at being imprisoned. Put simply, the instances of Welch's irrational outbursts and self-professed lack of understanding, which we depict in detail in our recitation of the facts and which Welch claims constitute evidence of his incompetence, do not show a reasonable probability that, on the days in question, he lacked a rational and factual understanding of the proceedings against him or the ability to consult his attorney with a reasonable degree of rational understanding.

Welch, without explicitly stating so, posits that the trial court had a duty to investigate his competence to stand trial, even though the issue was not raised at either hearing, because "the court had been made aware [he] must be on medication in order to be competent to stand trial." Welch thus asserts that the trial court had an obligation to ascertain if he was medicated on the days in question and if he had been acting appropriately in jail given the passage of "[a] significant amount of time . . . between the finding of competency" and the hearings. But Welch cites no authority, and we have found none, in support of the proposition that a defendant's mental illness obligates the trial court to investigate the defendant's competence to stand trial each and every time the defendant appears in court. Indeed, mental illness, in and of itself, does not raise an issue of incompetence. *Moore v. State*, 999 S.W.2d 385, 395 (Tex.Crim.App. 1999). Further, there is no

9

evidence that Welch was not on his medications on the days in question, and Welch does not claim on appeal that, in fact, he was not medicated. That the witnesses had no personal knowledge whether Welch was on his medications is not evidence that he was not medicated.

Welch's first and second issues are overruled.

## PUNISHMENT EVIDENCE

In his third issue, Welch claims that the trial court impermissibly denied him the opportunity to present punishment evidence. We disagree.

### *Applicable Law*

A defendant is entitled to a punishment hearing after an adjudication of guilt, and the trial court must permit him the opportunity to present evidence. *See* TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(a)(1), (d)(West Supp. 2014); *Borders v. State*, 846 S.W.2d 834, 835-36 (Tex.Crim.App. 1992)(per curiam)(plurality opinion); *Issa v. State*, 826 S.W.2d 159, 161 (Tex.Crim.App. 1992). Although a defendant has a statutory right to present punishment evidence, that right may be waived through inaction. *Vidaurri v. State*, 49 S.W.3d 880, 886 (Tex.Crim.App. 2001). To preserve a complaint concerning the right to present punishment evidence, a defendant must either object to the error at the time it occurred or, if there is no opportunity to do so, bring it to the trial court's attention afterwards. *Id*. at 885-86. The failure to lodge an objection waives the complaint for appellate review. *Id., citing* TEX.R.APP.P. 33.1(a).

### *Discussion*

Welch waived his complaint regarding the inability to present punishment evidence because he did not raise the issue at sentencing or in a post-judgment motion. *See Vidaurri*, 49 S.W.3d at 885-86 (appellant waived his complaint on appeal by not objecting to the trial court's

10

failure to allow him the opportunity to present punishment evidence at trial or in a motion for new trial).

Welch admits that he neither asked the court for an opportunity to present punishment evidence nor objected to his inability to present punishment evidence. But he maintains that his failure to proffer evidence or lodge an objection should not preclude him from claiming error on appeal because the trial court "in effect" prevented him from taking any action by proceeding directly from adjudication to argument on punishment. In support of the proposition that the trial court's action relieved him of the burden to preserve error in the trial court, Welch cites *Borders* and *Watson v. State*, 919 S.W.2d 845 (Tex.App.--Austin 1996, no pet.). Welch's reliance on these cases is misplaced.

First, contrary to Welch's assertion, he was given an opportunity to object and to present evidence. After adjudicating guilt, considering arguments on punishment, and assessing punishment, the trial court asked Welch's counsel if there was "any reason why sentence should not now be imposed." At that moment, Welch had the opportunity to object and present evidence, but he did neither. Instead, counsel responded "No, Your Honor." Put simply, Welch failed to take advantage of the opportunity afforded him to object and present evidence. *See Hardeman v. State*, 1 S.W.3d 689, 690 (Tex.Crim.App. 1999)(concluding that appellant had opportunity to object and present evidence, but did not do so, when asked, after being adjudged guilty, whether he had anything to say before pronouncement of sentence and he did not respond); *Henderson v. State*, Nos. 10-07-00030 & 31-CR, 2008 WL 598430, at *2 (Tex.App.--Waco March 5, 2008, no pet.)(mem. op., not designated for publication)(concluding that appellant had opportunity to object and present evidence, but did not do so, when asked if "there's any reason at law why sentence

11

should not be pronounced at this time[]" and his counsel replied that there was none); *compare with Borders*, 846 S.W.2d at 835-36 (concluding that, appellant had no opportunity to object or present evidence—or argument—before trial court sentenced him, after adjudicating guilt, despite being asked if there was any reason why sentence could not be pronounced and answering that there was none); *Watson*, 919 S.W.2d at 845-46 (appellant had no opportunity to object and present evidence—or argument—before trial court imposed a sixty-year prison sentence after telling him: "I don't need to hear any arguments from either side in this case. The Court has read the presentence investigation. It has made its decision of the findings to be made and the punishment to be assessed."). If Welch had wanted to present evidence on punishment, it was incumbent upon him to ask for that opportunity and to be ready to present such evidence. *Euler v. State*, 218 S.W.3d 88, 91-92 (Tex.Crim.App. 2007).

Second, even if Welch was not given the opportunity to object and present evidence at sentencing, to preserve his complaint for appellate review, he was required to bring the issue to the trial court's attention in a post-judgment motion. *Vidaurri*, 49 S.W.3d at 885-86. Welch did not file a post-judgment motion. Accordingly, we distinguish *Borders*, on which Welch relies, because the appellant in that case, unlike Welch, raised the error in a new trial motion. *See Borders*, 846 S.W.2d at 836 (concluding that appellant preserved complaint that he was not given opportunity to object or present evidence before trial court imposed sentence—despite trial court's inquiry whether he had anything to say why sentence should not be pronounced—by raising it for first time in motion for new trial). Additionally, as a plurality opinion, *Borders* is not binding precedent.

Welch's third issue is overruled.

**CONCLUSION**

The trial court's judgment is affirmed.


July 22, 2015

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)