ACCEPTED
06-15-00106-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
11/16/2015 2:32:49 PM
DEBBIE AUTREY
CLERK

## NO. 06 – 15-00106 – CR

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
11/16/2015 2:32:49 PM
DEBBIE AUTREY
Clerk

IN THE SIXTH DISTRICT COURT OF APPEALS
TEXARKANA, TEXAS

**MOISES RENTERIA**

**Appellant,**

**v.**

**THE STATE OF TEXAS**

**Appellee**

On appeal from the 188TH District Court, Gregg County, Texas
Trial Court Case No. 38,802-A

**BRIEF OF THE STATE OF TEXAS**

**– ORAL ARGUMENT NOT REQUESTED –**

**CARL L. DORROUGH**
Criminal District Attorney

Zan Colson Brown
Texas Bar No. 03205900
Assistant Criminal District Attorney
Gregg County, Texas
101 East Methvin St., Suite 333
Longview, Texas 75601
Telephone: (903) 236–8440
Facsimile: (903) 236–3701
E-mail: zan.brown@co.gregg.tx.us

# TABLE OF CONTENTS

TABLE OF CONTENTS ..........................................................................................1

INDEX OF AUTHORITIES..............................................................................2

STATEMENT OF FACTS...................................................................................3

SUMMARY OF THE ARGUMENT ................................................................7

ARGUMENT........................................................................................................9

   1)  Appellant intended to waive a jury, and although he was
       reluctant to sign the waiver, he eventually did so. ....................................9

   2)  Appellant did not clearly demonstrate incompetence as his
       appellate brief claims. ...........................................................................11

   a)  Article 46 B was changed, effective on September 1, 2011, to
       eliminate the requirement of bona fide doubt of a
       defendant's incompetence; this case was heard before that
       date. ......................................................................................................12

   b)  Trial Court *sua sponte* ordered a competency examination, but
       no competency trial; this is not an abuse of discretion. ..........................14

   c)  Legal Standards. ...................................................................................17

PRAYER ...........................................................................................................20

CERTIFICATE OF COMPLIANCE ...............................................................21

# INDEX OF AUTHORITIES

**Federal Cases**

*Marbut v. State*, 76 S.W.3d 742, 747-48 (Tex. App. - Waco 2002, pet. ref'd)........12

*Pate v. Robinson,* 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966) ..............17

**State Cases**

*Alcott v. State*, 51 S.W.3d 596, 599-601 (Tex. Crim. App. 2001)…………...….…12

*Burke v. State*, 792 S.W.2d 835 (Tex. App.—Houston [1ˢᵗ Dist.] 1990, pet. ref'd)17

*Fuller v. State*, 253 S.W.3d 220, 228 (Tex. Crim. App. 2008) ........................ 16, 17

*Grant v. State*, 2008 Tex. App. LEXIS 1453 (Tex. App. 2008)……………..……19

*Leonard v. State*, 2010 Tex. App. LEXIS 7404 (Tex. App. Texarkana Sept. 9, 2010)………………………………..………………………………..………17

*McDaniel v. State*, 98 S.W.3d 704 (Tex. Crim. App. 2003)...................... 11, 12, 17

*Moore v. State*, 999 S.W.2d 385 (Tex. Crim. App. 1999)................................ 17, 19

Statutes

Tex. Code Crim. Proc. 46 B.005 (a) (Vernon, 2009) ..............................................12

Tex. Code Crim. Proc. 46 B.005 (c) (Vernon, 2009) ..............................................13

Tex. Code Crim. Proc. 46B.004 (c-1) (Vernon 2011) .............................................11

Tex. Code of Crim. Proc. 46B.003 (Vernon, 2009) ................................................16

**STATEMENT OF FACTS**

Appellant Moises Renteria was charged by indictment with the one count of Aggravated Sexual Assault and one count of Indecency with a Child. CR 6. Appellant entered a not guilty plea on August 1, 2011, and was sentenced to concurrent sentences of life for Count I, and 20 years for Count II. 3 RR 127. Before the trial, Appellant's attorney had moved to withdraw as counsel due to an unspecified conflict between Appellant and his counsel. CR 42. The Court heard that motion on February 17, 2011, but did not rule on it; instead, in an abundance of caution, he ordered Renteria to be examined on issue of competency. 2 RR 9-10; CR 45.

At the hearing on the motion for withdrawal, his counsel offered a letter written in Spanish by Renteria explaining his reasons for wanting the attorney to withdraw. The interpreter summarized the letter's contents: Counsel was not representing him to his satisfaction; Counsel predicted court events that did not occur; "that he is a witch that – that he's being delayed in the process to go to court many times"; and that a cotton swab of his mouth was used for DNA testing instead of semen. 2 RR 5.

Renteria, after being sworn, elaborated on the semen-sample complaint: an attorney from child protective services allegedly told Renteria that he was going to be giving a semen sample and would have to take a lie-detector test. Then his

counsel told him that he had been misinformed, and that his counsel "was going to do his work and only his work." 2 RR 5. Renteria complained of being in jail for 16 months and 17 days without a trial, even though he has been before a judge many times and had been told a trial should take place within six months. 2 RR 5-6. He claimed discrimination. 2 RR 6. His father had died and his mother had suffered an accident, and his four children were starving, and his attorney did not appear to care. 2 RR 6. He concluded with, "I have a lot to say and many things to say, but I prefer to remain silent." 2 RR 6.

He denied being given an offer of a plea agreement, but his attorney said he had relayed the offer of 15 years. 2 RR 7-8. (That offer was made before Renteria requested a DNA test). *Id*. The attorney reported to the Court that Renteria would not plead guilty to anything because he was innocent. 2 RR 7-8. Once the DNA results were in, the offer was changed to 40 years, which the attorney negotiated down to 35. 2 RR 8. The State's attorney stated that 35 years was still the recommendation by the State at the time of the motion to withdraw. 2 RR 8.

Regarding the jury waiver, Defense Counsel told the court that he and Renteria had spoken about a jury trial and the attorney had explained that a jury was twelve citizens, not professional judges. 2 RR 9. Then Renteria decided he wanted to be tried by a judge. 2 RR 9. Counsel went on to explain to the trial

4

court that there had not been a signed jury waiver because their conversation had taken place at the jail, not in open court where Renteria could have executed the waiver. 2 RR 9.

When asked by the Court if he wanted a jury trial, Renteria expressed his dissatisfaction with being asked such questions, asserting that "What could have been done in six months is being now done in 16 months and 17 days." At that point, the trial judge began, but did not finish a sentence explaining his ruling, "I think what the Court is going to do out of abundance of caution--- yes, go ahead." 2 RR 9. Renteria then continued his list of complaints, some of which seemed related to his major complaint about the delayed proceedings, but some of which seemed unrelated. 2 RR 10. These will be discussed in more detail in the argument section.

At that point, the judge expressed his concern about Renteria's ability to communicate with his attorney and to assist in preparing for trial, and whether he understood these proceedings. 2 RR 10. He explained that Dr. Allen would, with the help of the interpreter, examine him for competence to stand trial. 2 RR 10. Proceedings were abated until that report came in. No objection from either attorney appears in the record, but Renteria himself threatened to alert the media, because he wanted "all of Mexico to know about this, what is happening." 2 RR 10.

The order appointing Dr. Allen recites that the defense had filed a motion for a competence exam, but the Reporter's Record and the docket sheet both indicate that the decision for such an examination was the judge's idea. 2 RR 10; CR 45, 46. The motion to withdraw had said nothing about incompetence. 2 RR 42.

Dr. Allen's report was not mentioned in the Reporter's Record, but the Clerk's Record shows that Dr. Allen sent copies to both attorneys and the Court on March 4, 2011 CR 50. Dr. Allen's findings were that Renteria was competent, although he noted that Renteria would not sign a form stating he understood the process because the form was not in Spanish. CR 50. He further noted that Renteria's thoughts were adequately organized; responses were relevant, rational, and logical; there were no indications of cognitive impairment nor psychiatric disorder. CR 51. Regarding the "magical thinking" which had concerned his counsel and the interpreter, Dr. Allen attributed it to his culture, rather than mental illness. CR 51.

Dr. Allen concluded that Renteria is competent because he demonstrates an adequate rational and factual understanding of the proceedings against him, as well as the capacity to cooperate and collaborate with counsel rationally in his own defense. Dr. Allen further concluded Renteria is neither mentally retarded nor psychotic nor in need of psychiatric care. CR 53.

On the day of trial there was another prolonged discussion about whether Renteria would sign a jury waiver, but he eventually did so, and after the judge assured himself that Renteria had signed it voluntarily, the judge accepted it and a bench trial began. At the end of the bench trial, the judge found him guilty on both counts and sentenced him to life for the aggravated sexual assault and twenty years for indecency with a child, with both sentences to run concurrently. See Judgments, CR 54-59.

This out-of-time appeal, which was allowed after a writ of habeas corpus was granted, ensued.

## SUMMARY OF THE ARGUMENT

Appellant waived a jury trial orally, and albeit reluctantly, in writing; he never once said he wanted a jury. Appellant was not incompetent to stand trial. While there was some minimal concern about his competence to stand trial, and while the Trial Court did see fit to order a competence examination "out of an abundance of caution," there was no need for a competency trial. Nobody requested one and nobody objected to the lack of one. Under the law at the time of this case, bona fide doubt regarding his competence was required. The testimony elicited at trial was not sufficient to raise a bona fide doubt regarding Appellant's competence. The trial court did not abuse its discretion by failing to order a

competency trial under Texas Code of Criminal Procedure Chapter 46B. There was sufficient testimony to demonstrate that Appellant understood where he was, what he was charged with, the roles played by court participants, and the implication of his jury waiver.

**ARGUMENT**

1) **Appellant intended to waive a jury, and although he was reluctant to sign the waiver, he eventually did so.**

Appellant's first point of error alleges that his waiver of a jury trial was involuntary. The record, however, includes a written waiver of jury trial signed August 1, 2014. CR 62. Appellant claims that Appellant did not understand the concept of a jury trial, the significance of a jury waiver, or the consequences of the waiver.

This appellant, a Spanish-speaker, told his trial counsel, who was also fluent in Spanish, that he preferred for the judge to determine his guilt rather than have twelve citizens do so. 2 RR 9. Thus, he understood the concept of a jury trial.

When the judge asked him if he wanted a jury trial, he at first objected to being asked such a question after having been in jail for over sixteen months. 2 RR 9. Then he listed other objections he had to the proceedings and the lack of support from others, but he did not answer the judge's question. 2 RR 10. This caused the judge to (in "an abundance of caution") order an examination by Dr. Allen, with an interpreter's services.) 2 RR 9, 10. The trial court appropriately declined to rule on the attorney's motion to withdraw, abating all proceedings until that report came in, but promising that if Dr. Allen found him competent, there would be a jury trial.

Later, after the evaluation had been received by all parties, Renteria was again asked if he wanted a trial to the court, not a jury, and he immediately

responded, "Yes, that is how it is." 3 RR 8. He did not, however, want to sign a paper saying he did not want a jury; the judge had to patiently explain to him that if he did not freely and voluntarily sign the jury waiver, the case would have to go to a jury and it would not be concluded that day. 3 RR 8-16. Before he signed the waiver, he wanted to say something to the judge, but the judge cautioned him against that and insisted that he wait until the appropriate time during the trial when he could testify under oath and have his say then.

Renteria never explained why he did not want to sign the jury waiver, saying only that he shouldn't have to do so. Dr. Allen had reported that Renteria also refused to sign a paper for him, stating the Dr. Allen had explained the process to him. CR 50. In that situation, he had refused because Dr. Allen had no Spanish version of the document. *Id.*

Eventually, however, Renteria signed the jury waiver and after appropriate questions to ensure that the waiver was voluntary, the judge accepted the jury waiver and the bench trial proceeded. CR 62; 3 RR 16-17.

Renteria waived his right to a jury trial orally in open court and in writing. The record is devoid of any statement by Renteria that he wanted a jury trial. His attorney had explained what a jury was. Renteria attempted to avoid signing the jury waiver until after he had said something to the judge. Eventually, however, he relented and signed the required waiver. The Court thus complied with statutory

10

provisions for waiving a jury trial. Tex. Code Crim. Proc. Art. 1.13. Appellant has not rebutted the presumption of regularity in court proceedings. His first point of error should be rejected.

## 2) Appellant did not clearly demonstrate incompetence as his appellate brief claims.

In his second point of error, Appellant claims that the trial court erred by failing to properly hold a hearing regarding Appellant's competency to stand trial, claiming that "Appellant's basically nonsensical ramblings brought to the trial court's attention that the issue of competency existed." Appellant's Brief at 11-12.

Appellant demonstrated a reluctance to sign his jury waiver, but he did not demonstrate incompetence. He demonstrated dissatisfaction with his attorney and he demonstrated a reluctance to communicate with his attorney, but he did not demonstrate an inability to communicate effectively with his attorney. He did not demonstrate any mental illness, any psychotic thinking, or any inability to understand the proceedings. He obstinately expressed his desire to not have to sign the jury waiver, but eventually, he signed it. The judge did not accept it until he established on the record that it was voluntary. Renteria repeatedly expressed his desire to speak directly with the judge, but the judge,

of course, denied his request, and explained why. Renteria expressed dissatisfaction with the slow process, but he did not demonstrate an inability to understand the proceedings. He might not have had a complete understanding of the proceedings before he came to court, but he certainly had the capacity to understand when the judge explained the proceedings to him. He demonstrated a desire to have the trial proceed on his terms, but he did not demonstrate incompetence. Obstinate behavior does not constitute incompetence.

### a) Article 46 B was changed, effective on September 1, 2011, to eliminate the requirement of bona fide doubt of a defendant's incompetence; this case was heard before that date.

At the time of the hearing on his counsel's motion to withdraw, in February of 2011, a trial court's doubt had to rise to the level of "*bona fide*" doubt. Tex. Code Crim. Proc. 46B. The section that did away with the *bona fide* doubt standard was not effective until September 1, 2011. Tex. Code Crim. Proc. 46B.004 (c-1) (2011).

At the time this case was heard, the state of the law was as described in the *McDaniel* case. *McDaniel v. State*, 98 S.W.3d 704 (Tex. Crim. App. 2003). The steps needed for a trial court to inquire about competence are as follows:

"1) if a competency issue is raised by the defendant, any party, or the court; and 2) evidence of incompetency is brought to the attention of the trial court by the defendant, any party, or the court; 3) of the type to raise a *bona fide* doubt in the judge's mind regarding the defendant's competency to stand trial; then 4) the judge must conduct

12

a Section 2 'competency inquiry' to determine if there is some evidence sufficient to support a finding of incompetence, and if there is, 5) the judge must impanel a jury for a Section 4 'competency hearing.' *Alcott v. State*, 51 S.W.3d 596, 599-601 (Tex. Crim. App. 2001); *see also id.* at 602...; *see also Marbut v. State*, 76 S.W.3d 742, 747-48 (Tex. App. - Waco 2002, pet. ref'd) (following *Alcott* in setting out appropriate steps and concluding that defendant failed to offer sufficient evidence to create a *bona fide* doubt of competency)." *McDaniel* at 712.

A trial judge need not perform a competency inquiry unless evidence is presented that raises a bona fide doubt in the judge's mind regarding the defendant's "present ability to consult with his lawyer with a reasonable degree of rational understanding" or defendant's "rational as well as factual understanding of the proceedings." *McDaniel* at 712.

After an informal inquiry, if the court determines that evidence exists to support a finding of incompetency, the court "shall order an examination" to determine the issue. Tex. Code Crim. Proc. 46 B.005 (a) (Vernon, 2009). The court shall then order a competency trial before determining whether the defendant is incompetent to stand trial. Tex. Code Crim. Proc. 46 B.005 (b) (Vernon, 2009). However, a competency trial is not needed if:

1. Neither party requests a competency trial.

2. Neither party opposes a finding of incompetency.

3. The judge does not, on its own motion, determine a trial is necessary.

Tex. Code Crim. Proc. 46 B.005 (c) (Vernon, 2009).

The trial court, in accordance with the statute in effect at the time, exercised caution by ordering, on its own motion, a competency evaluation, but did not see fit to order a competency trial. Neither party requested it, neither party objected, and the judge did not, on his own, deem it necessary. Such action, or lack thereof, on the part of the trial court was neither unreasonable nor arbitrary, and did not constitute an abuse of discretion. Thus, Appellant's second issue should be decided in favor of the state, and his conviction affirmed.

b) **Trial Court** *sua sponte* **ordered a competency examination, but no competency trial; this is not an abuse of discretion.**

Defendant's attorney did not file for a competency evaluation, but instead moved to withdraw and set a hearing. At that hearing, Defendant's behavior raised some doubt in the judge's mind as to Defendant's competence. The doubt was minimal, because the *sua sponte* order for an evaluation was made "in an abundance of caution." 2 RR 9-10. Furthermore, the record reflects that no one requested a competence trial nor objected to the lack of one. Nor does the record reflect that any party opposed a finding on the competency issue. The trial court did not determine, on its own motion, to order a formal trial on the issue. This shows compliance with Chapter 46B.

The appellant argues that his behavior clearly showed that he did not understand the proceedings. See Appellant's Brief at 12, citing 2 RR 5-6 and 9-10.

14

The defendant's words were being translated from Spanish to English. On pages 5 and 6 of Volume 2, Mr. Renteria was trying to explain to the judge why he wanted his trial counsel to be replaced: he claimed a Child Protective Services attorney had told him he would be giving a semen sample and would have to take a lie detector test. His attorney told me that information was wrong. 2 RR 5. His attorney allegedly said "that he was going to do his work and only his work." 2 RR 5. Renteria was competent enough to explain to the Court why his attorney should be replaced.

He complained of having been in jail for sixteen months and seventeen days. He said his attorney had given him a paper to sign so that his trial would be open. 2 RR 6. He claimed that he had been discriminated against. 2 RR 6. He claimed to have been in front of many other judges where he was told he could have a trial in a period from one to six months, and he was unhappy because that had not happened. 2 RR 6. He further complained that his attorney was not sympathetic when he learned that Renteria's father had died and his mother was in an accident, that his wife was working and his children in Mexico were starving. 2 RR 6.

While appellant claims that this monologue proves incompetency, it can arguably also be viewed as evidence that Mr. Renteria knew exactly what was happening—he was arguing for the judge to allow his attorney to withdraw. He knew the judge's role; he knew his attorney's role, and he understood the concept

of a speedy trial.  He might not be an excellent orator, but he was not incompetent to stand trial.

On pages nine and ten, the defendant continued to express his outrage that his case had not been tried within six months, even when asked about whether he wanted a jury. 2 RR 9.  At that point, the judge began to announce the evaluation: "I think what the Court is going to do out of abundance of caution—yes, go ahead." 2 RR 9.

Renteria then mentioned a paper that "this gentleman wanted me to sign on the 29[th] of November," had been signed in the middle of December of 2009. 2 RR 10. He expressed his frustration that there had been a change in the lab, and that he didn't have the name of the first lab. 2 RR 10.  He stated that he had been sent to a different jail, and that he had asked his pastor to investigate a lady named Ana when "the tests were run over there." 2 RR 10.   He complained of his lack of support from anybody.  He concluded, "What I'm telling you Mr. Judge or Your Honor is do with me whatever you want. With all my respect." 2 RR 10.

Again, the appellant argues that Renteria's words indicate incompetence. His words, though inarticulate, indicate his frustration with the process, his dissatisfaction with his attorney, and his dissatisfaction with his situation and the lack of support, but they do not indicate incompetence.  He understood the proceedings.  He demonstrated he has the capacity to communicate with his

16

attorney and assist in his own defense. He does not show mental illness that causes him to be unable to communicate. His English may be deficient, but he never complained that his attorney could not speak Spanish or that the interpreter was ineffective.

Then the judge finished his ruling that there would be a competency evaluation, followed by a jury trial. Neither Renteria nor his attorney nor the attorney for the State objected. The evaluation occurred and a report was sent to all parties. No further discussion of competence was had on the record, even at subsequent proceedings.

### c) Legal Standards.

This Court has previously found that a trial court's decision not to conduct a competency hearing is reviewed for an abuse of discretion. *Leonard v. State*, 2010 Tex. App. LEXIS 7404 (Tex. App. Texarkana Sept. 9, 2010) (mem. op. not designated for publication), (relying on *Moore v. State,* at 393. A trial court abuses its discretion if its decision is arbitrary or unreasonable. *Leonard v. State*, (citing *Lewis v. State,* 911 S.W.2d 1, 7 (Tex. Crim. App. 1995)).

Under Texas law, a defendant is presumed to be competent to stand trial. Tex. Code of Crim. Proc. 46B.003. In *Fuller v. State*, cited by Appellant to support his claim that a trial court must hold a separate, formal hearing on competence, the

Texas Court of Criminal Appeals summarized the law applicable to this issue. An accused person is incompetent to stand trial if he does not have "sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding" or "a rational as well as factual understanding of the proceedings against" him. *Fuller v. State*, 253 S.W.3d 220, 228 (Tex. Crim. App. 2008) (citing *Pate v. Robinson,* 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966)). The *Fuller* and *Pate* courts defined "*bona fide* doubt" as "a real doubt in the judge's mind as to the defendant's competency." *Id.,* quoting *Pate v. Robinson* at 378. Evidence raising *bona fide* doubt does not need to be sufficient to support a finding of incompetence and is "qualitatively different from such evidence." *Id.*, quoting *Alcott v. State,* 51 S.W.3d 596, 599, n. 10 (Tex. Crim. App. 2001).

*Bona fide* doubt is shown by "recent severe mental illness, at least moderate retardation, or truly bizarre acts by the defendant." *McDaniel v. State,* 98 S.W.3d 704, 710 (Tex. Crim. App. 2003).

A person's disruptive and unruly courtroom behavior isn't necessarily sufficient evidence of incompetence to stand trial. *Moore v. State*, 999 S.W.2d 385 (Tex. Crim. App. 1999). "If such actions were probative of incompetence, one could effectively avoid criminal justice through immature behavior." *Burke v. State*, 792 S.W.2d 835 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd).

In an unpublished opinion, the First District Court of Appeals discussed a defendant whose behavior sounds like Renteria's:

> Although appellant's answers were, at times, rambling and nonresponsive…, most of appellant's testimony reveals simple that he wanted an opportunity to tell his story in his own way and to relate what he felt was important. Appellant's testimony also indicated that he understood the charges against him. … While some of appellant's testimony may have been damaging and ill-advised, it did not suggest that he lacked a rational understanding of the case against him or an inability to communicate with his counsel.

*Grant v. State*, 2008 Tex. App. LEXIS 1453 (Tex. App. 2008) (mem. op. not designated for publication.

The trial court in this case raised the issue of incompetence, but did not follow through with a trial on competency. The doubt raised in this case was minimal and was assuaged by the report from Dr. Allen. Nobody requested a hearing, and nobody objected when Dr. Allen's report was distributed. Nobody opposed the implied finding on the issue of incompetence.

Appellant's second point of error should be rejected and the conviction affirmed.

## PRAYER

The State prays that the conviction and sentence be affirmed because he voluntarily waived a jury trial and the judge did not abuse his discretion by not conducting a competency trial.

Respectfully Submitted,

 _/s/ Zan Colson Brown_
Zan Colson Brown
Texas Bar No. 03205900
Assistant District Attorney
101 East Methvin St., Suite 333
Longview, TX  75601
Telephone: (903) 236–8440
Facsimile:  (903) 236–3701
Email:  zan.brown@co.gregg.tx.us

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing has been forwarded to all counsel of record by electronic filing

this 12th day of November, 2015.

 _/s/ Zan Colson Brown_
Zan Colson Brown
Assistant Criminal District Attorney

# CERTIFICATE OF COMPLIANCE

I certify that the **BRIEF OF THE STATE OF TEXAS,** exclusive of the following: caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix, contains 4,030 words, according to Word software.


/s/ *Zan Colson Brown*
Zan Colson Brown
Assistant District Attorney