# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-17-00143-CR

**Cristal Juanita Montoya, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 426TH JUDICIAL DISTRICT
### NO. 75606, THE HONORABLE FANCY H. JEZEK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Cristal Juanita Montoya guilty of sexual assault of a child for performing oral sex on fifteen-year old S.A.I.  *See* Tex. Penal Code § 22.011(a)(2)(C) (defining offense of sexual assault of child as "caus[ing] the sexual organ of a child to contact or penetrate the mouth . . . of another person, including the actor"), (f) (classifying offense of sexual assault of child, generally, as second degree felony).  The jury assessed appellant's punishment at confinement for five years in the Texas Department of Criminal Justice.  *See id.* § 12.33 (establishing punishment range for second degree felony).  On appeal, appellant complains about the trial court's failure to *sua sponte* conduct an informal inquiry into her competency to stand trial.  We find no reversible error. However, through our own review of the record, we have found non-reversible error in the written judgment of conviction. We will modify the judgment to correct the clerical error and, as modified, affirm the trial court's judgment of conviction.

# BACKGROUND[1]

The jury heard evidence that appellant met S.A.I. through S.A.I.'s cousin, who babysat appellant's children. Appellant began communicating with S.A.I. through Facebook, and the messages eventually turned toward sexual matters. Appellant asked S.A.I. if she knew anyone who was bisexual and was willing to participate in a threesome; appellant then later asked S.A.I. if, were she older, she would be interested in a threesome. The record reflects that S.A.I. was fifteen; appellant was ten years older than S.A.I.

During one communication, appellant asked S.A.I. to watch her children during the day while she was at work. S.A.I. was hesitant because she was feeling "emotional" and "stressed" because it was the day of the funeral of her uncle, who had been "like another father figure to [her]." Ultimately, S.A.I. agreed to babysit because she needed the money. Because S.A.I. did not have a ride to appellant's house, appellant picked her up the night before the day of babysitting so S.A.I. could spend the night at appellant's house. On the ride to appellant's house, appellant asked S.A.I. if she would participate in a threesome with appellant and her boyfriend. S.A.I. expressed uncertainty. Appellant also stopped at the liquor store and bought alcohol.

At appellant's house, appellant made dinner for her four children and S.A.I. After dinner, appellant and S.A.I. began drinking shots. S.A.I. indicated that she was drinking the alcohol

---

[1] Because the parties are familiar with the facts of the case, its procedural history, and the evidence adduced at trial, we provide only a general overview of the facts of the case here. We provide additional facts in the opinion as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4. The facts recited are taken from the testimony and other evidence presented at trial.

because she "wanted to get [her] uncle's death off [her] mind." Later that evening, appellant's boyfriend arrived at appellant's house.

At some point, S.A.I. began feeling sick so she went to lie down in appellant's room. A few minutes later, appellant joined her. She kissed S.A.I. and put S.A.I.'s hands on her (appellant's) breasts. The two then undressed. Once S.A.I. was undressed, appellant "slowly began to go down towards [S.A.I.'s] vagina to penetrate [her] with her mouth." Appellant contacted S.A.I.'s sexual organ with her mouth and penetrated it with her finger. Afterwards, the two kissed some, and S.A.I. performed oral sex on appellant. Appellant then went to get her boyfriend. Appellant put a condom on her boyfriend, and they started kissing. Appellant then kissed S.A.I. while her boyfriend touched S.A.I.'s sexual organ. He then penetrated S.A.I.'s sexual organ with his penis. After a few minutes, he withdrew from S.A.I. and engaged in sexual intercourse with appellant. Appellant and her boyfriend were lying next to S.A.I., touching her breasts and genitals with their hands while they were having intercourse. After appellant's boyfriend "finished," S.A.I. got up, cleaned herself up, and got dressed. When S.A.I. returned, appellant told S.A.I. to lie about her name and age if her boyfriend asked. S.A.I. slept in one of the children's rooms that night and watched the children the next day as planned.

S.A.I. testified that she subsequently returned to appellant's home on several occasions to watch appellant's children and had sex with appellant "around eight times." She indicated that appellant's boyfriend was also present during those encounters, which were all similar to the first one S.A.I. described.

3

Appellant elected not to testify during the guilt-innocence phase of trial. During the punishment phase, she testified and admitted that she had a sexual relationship with S.A.I., that she put her mouth on S.A.I.'s sexual organ, and that the sexual contact "happened several times." She explained, however, that S.A.I. could have "said no, stop, leave me alone, or got up that night and called the police." Appellant maintained that she "didn't force [S.A.I.]" and insisted that S.A.I. "knew what she was doing."

## DISCUSSION

In her sole point of error, appellant contends that the trial court abused its discretion in failing to *sua sponte* conduct an informal competency inquiry.

### Standard of Review

We review a trial court's decision not to conduct an informal competency inquiry into a criminal defendant's competency to stand trial for an abuse of discretion. *Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009), *superseded by statute on other grounds as recognized in Turner v. State*, 422 S.W.3d 676, 692 & n.31 (Tex. Crim. App. 2013); *Moore v. State*, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999). A trial court does not abuse its discretion absent a showing that its decision was arbitrary or unreasonable. *Montoya*, 291 S.W.3d at 426; *Moore*, 999 S.W.2d at 393.

In conducting our review, we do not substitute our judgment for that of the trial court, but rather determine whether the trial court's decision was arbitrary or unreasonable. *Montoya*, 291 S.W.3d at 426. We give "great deference" to the trial court's assessment of a defendant's ability

4

to rationally and factually understand the proceedings and to assist counsel. *See McDaniel v. State*, 98 S.W.3d 704, 713 (Tex. Crim. App. 2003).

## Competency to Stand Trial

A fundamental principle of our criminal justice system is that, as a matter of constitutional due process, a criminal defendant who is incompetent may not stand trial. *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018); *Owens v. State*, 473 S.W.3d 812, 816 (Tex. Crim. App. 2015); *Turner*, 422 S.W.3d at 688; *see Drope v. Missouri*, 420 U.S. 162, 171 (1975) ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial."). The constitutional standard for competency to stand trial is codified in the statutory scheme set forth in article 46B of the Texas Code of Criminal Procedure, which describes the circumstances that require, and the procedures for making, a determination of whether a defendant is competent to stand trial. *See* Tex. Code Crim. Proc. arts. 46B.001–.055.

Substantively, incompetency to stand trial is shown if the defendant does not have: "(1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person." *Boyett*, 545 S.W.3d at 563 (quoting Tex. Code Crim. Proc. art. 46B.003(a)); *accord Turner*, 422 S.W.3d at 689. Procedurally, a trial court employs two steps for making competency determinations before it may ultimately conclude that a defendant is incompetent to stand trial: the first step is an informal inquiry; the second step is a formal competency trial. *Boyett*, 545 S.W.3d

5

at 563. "An informal inquiry is called for upon a 'suggestion' from any credible source that the defendant may be incompetent." *Id.*; *see* Tex. Code Crim. Proc. art. 46B.004(a), (c), (c-1). At the informal inquiry, there must be "some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." *Boyett*, 545 S.W.3d at 563 (quoting Tex. Code Crim. Proc. art. 46B.004(c)). If that requirement is met, the trial court must order a psychiatric or psychological competency examination, and, except for certain exceptions, must hold a formal competency trial. *Boyett*, 545 S.W.3d at 563; *Turner*, 422 S.W.3d at 693; *see* Tex. Code Crim. Proc. arts. 46B.005(a), (b), 46B.021(b).

"Evidence suggesting the need for an informal inquiry may be based on observations made in relation to one or more of the factors described by Article 46B.024 or on any other indication that the defendant is incompetent within the meaning of Article 46B.003." Tex. Code Crim. Proc. art. 46B.004(c-1). These factors include the defendant's capacity during criminal proceedings to (a) rationally understand the charges against him and the potential consequences of the pending criminal proceedings; (b) disclose to counsel pertinent facts, events, and states of mind; (c) engage in a reasoned choice of legal strategies and options; (d) understand the adversarial nature of criminal proceedings; (e) exhibit appropriate courtroom behavior; and (f) testify. *Id.* art. 46B.024(1).

In complaining about the trial court's failure to *sua sponte* conduct an informal competency inquiry, appellant cites to various statements contained in the report of a psychological evaluation that was conducted in a separate Child Protective Services proceeding to assess appellant's parental fitness and the evaluating psychologist's trial testimony, which was admitted

6

into evidence during the punishment phase of trial. The trial testimony and report indicated that appellant had potential mental-health issues, was poorly educated and had learning difficulties, and self-reported below average intelligence.

However, the record reflects that the psychological evaluation in the CPS proceeding was conducted five months before trial. The relevant time frame for determining competency is at the time of the proceedings. *See Morris v. State*, 301 S.W.3d 281, 292–93 (Tex. Crim. App. 2009) ("[T]he competency question assesses the defendant's mental condition at the time of trial."). Moreover, the issues that appellant references—her alleged mental illness and intellectual deficiencies—are not, in and of themselves, suggestions of incompetency to stand trial. A defendant's mental illness, past or present, absent credible evidence that, because of it, he lacks "(1) sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against [him]," *see* Tex. Code Crim. Proc. art. 46B.003(a), does not necessarily equate to a suggestion of incompetency. *See Boyett*, 545 S.W.3d at 564; *Turner*, 422 S.W.3d at 696. "There must be '*some* evidence from which it may rationally be inferred *not only* 1) that the defendant suffers some degree of debilitating mental illness, and that 2) he obstinately refuses to cooperate with counsel to his own apparent detriment, *but also* that 3) his mental illness is what fuels his obstinacy.'" *Boyett*, 545 S.W.3d at 564 (quoting *Turner*, 422 S.W.3d at 696). In other words, some evidence must show that a defendant's mental illness is the source of his inability to participate in his own defense. *Id.*; *Turner*, 422 S.W.3d at 696. The fact appellant has or is being treated for mental illness does not by itself mean she is incompetent to stand trial. Nor does the fact that she is uneducated or has learning

7

challenges. The inquiry is whether her mental illness or intellectual deficiency "operate[d] in such a way as to prevent [her] from rationally understanding the proceedings against [her] or engaging rationally with counsel in the pursuit of [her] own best interests." *See Turner*, 422 S.W.3d at 691. Nothing in the record here indicates that they did.

In this case, prior to the testimony of the psychologist who conducted the psychological evaluation in the CPS proceeding and the admission of his report, which appellant now contends amount to a suggestion of incompetency, the trial court had the opportunity to preside over pretrial proceedings as well as the trial. Thus, the court had multiple opportunities to interact with and observe appellant. Nothing in the record of the pretrial proceedings or the trial itself suggested that appellant was incompetent as defined by article 46B.003.

The record reflects that about a week before the CPS psychological evaluation was conducted, appellant wrote a letter to her appointed counsel asking him to withdraw as her attorney. She cited, among other things, a "lack of communication" and her belief that appointed counsel was not "actually trying to help represent [her]." At the hearing on the motion, appellant testified and articulated her concerns in a coherent, logical, and rational manner.

The trial court also had the opportunity to preside over a guilty-plea proceeding. The trial court engaged in extensive dialogue with appellant regarding the plea, and nothing in the record of that proceeding suggested that appellant was incompetent to stand trial. While appellant did, at one point, express some confusion or lack of understanding about the proceeding, after being given the opportunity to confer with her attorney, she expressed her understanding of the proceeding, the constitutional rights she was giving up, and the plea-bargain agreement. The record does not reflect

8

that appellant's momentary confusion alone was sufficient to obligate the trial court to *sua sponte* conduct an informal competency inquiry. The fact that appellant, a person inexperienced with the law and unfamiliar with the criminal justice system, needed clarification from an attorney, an expert in the law and criminal proceedings, about some of the legal concepts or procedure involved in a legal proceeding does not suggest incompetency under article 46B.

At the sentencing hearing, three months after the plea proceeding, when the trial court asked appellant if she still wanted to proceed with her guilty plea, appellant expressed that she did not. After conferring with her attorney, appellant withdrew her guilty plea because, according to her attorney, she did not "independently remember" the events and wanted to go to trial. The trial court advised appellant that, in going to trial, she would forfeit the State's agreement to reduce the charge to the lesser-included offense (per the plea-bargain agreement) and would be tried on the greater offense as alleged in the indictment. Appellant indicated that she understood, and made the choice to go to trial. Once again, nothing in the record of that proceeding suggested that appellant was incompetent to stand trial.

Finally, nothing in the trial proceeding suggested that appellant was incompetent. Despite the evidence reflected in the psychologist's testimony and contained in the report of the CPS psychological evaluation, which indicated potential mental-health illness and possible intellectual deficiencies, there was no suggestion from any source that appellant suffered from any debilitating mental illness or intellectual disability such that she lacked the capacity to "rationally understand the charges against [her] and the potential consequences of the pending criminal proceedings," "engage

9

in a reasoned choice of legal strategies and options," and exhibit appropriate courtroom behavior.[2] *See* Tex. Code Crim. Proc. art. 46B.024.

"A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence." *Id.* art. 46B.003(b). Under Texas law, a suggestion of incompetency triggers a requirement for the trial court to conduct an informal inquiry into the defendant's competence. *Id.* art. 46B.004(b), (c). Nothing in the record here triggered an informal inquiry. Nothing in the record of the pretrial proceedings or the trial, which took place almost five months after the CPS psychological evaluation that appellant relies on, suggested any sign of incompetency. The record shows that appellant understood the charge against her and the adversarial nature of the proceedings. It is also clear from the record, including appellant's statements, that she was capable of working with her trial counsel, that they had discussed strategic alternatives and any possible defense that she might have, and that she was capable of making informed decisions regarding those alternatives. Nothing in the record shows that appellant acted belligerently or that she exhibited any kind of inappropriate behavior at all. In addition, the record shows that appellant was able to testify in an articulate and coherent manner on both direct examination and cross-examination.

---

[2] We note that nothing in the evidence regarding appellant's intellectual deficiencies, which were based in large part on her self-reporting and her education level, indicated that appellant's intellectual issues rose to the level of an intellectual disability. *See* Tex. Code Crim. Proc. art. 46B.001(1) (explaining that "intellectual disability" has meaning assigned by section 591.003(7-a) of Health and Safety Code and means "significantly subaverage general intellectual functioning that is concurrent with deficits in adaptive behavior and originates during the developmental period").

Based on the record before us, we cannot conclude that the trial court abused its discretion by failing to *sua sponte* conduct an informal inquiry into appellant's competency to stand trial. *See Montoya*, 291 S.W.3d at 426 (noting that "those who observed the behavior of the defendant at the hearing were in a better position to determine whether she was presently competent"); *McDaniel*, 98 S.W.3d at 713 ("We cannot ignore the trial court's first-hand factual assessment of appellant's mental competency. [The court's] factual findings, that appellant understood the nature of the proceedings and assisted his counsel in his defense, are entitled to great deference by the reviewing court."). Accordingly, we overrule appellant's sole point of error.

### Error in Judgment

On review of the record, we observe that the written judgment of conviction in this case contains non-reversible clerical error. The judgment states that the "Statute for Offense" is "22.011(a)(2)(A) Penal Code." This statutory provision defines the offense of sexual assault of a child as a person "caus[ing] the penetration of the anus or sexual organ of a child by any means." However, the applicable statutory provision for the offense of sexual assault of a child for which appellant was indicted and convicted is section 22.011(a)(2)(C) of the Penal Code, which defines the offense of sexual assault of a child as a person "caus[ing] the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor."

This Court has authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R. App. P. 43.2(b) (authorizing court of appeals to modify trial court's judgment and affirm it as modified); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993) (concluding that Texas Rules of Appellate Procedure empower courts of appeals

11

to reform judgments).  Accordingly, we modify the judgment of conviction to reflect that the "Statute for Offense" is "22.011(a)(2)(C) Penal Code."

## CONCLUSION

Having concluded that the trial court did not abuse its discretion by not *sua sponte* conducting an informal competency inquiry but having found non-reversible clerical error in the written judgment of conviction, we modify the judgment as noted above to correct the error and affirm the trial court's judgment of conviction as modified.

_____

Cindy Olson Bourland, Justice

Before Justices Puryear, Field, and Bourland

Modified and, as Modified, Affirmed

Filed:   November 29, 2018

Do Not Publish