In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-19-00004-CR
NO. 09-19-00006-CR
_____

CHARLES ROBERT ALPERS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 411th District Court
Polk County, Texas
Trial Cause Nos. 25958, 25959

**MEMORANDUM OPINION**

A jury convicted Charles Robert Alpers of the offenses of evading arrest and possession of a controlled substance in an amount greater than four grams but less than 200 grams. The trial court sentenced Alpers to seven years of confinement for each offense with the sentences to run concurrently. In one issue, Alpers challenges the trial court's denial of a competency evaluation by an expert. We affirm.

1

## Background

A Texas State Trooper observed two motorcycles traveling at high rates of speed through the city of Livingston, Texas. He began following one of the motorcyclists, Alpers, who he observed roll through a stop sign then continue traveling at a high rate of speed. The Trooper testified that he activated his lights, and when Alpers failed to stop, he pulled closer and activated his sirens to try to ensure Alpers knew he was behind him. The Trooper said he observed Alpers check his mirror, so it was his opinion that Alpers knew he was there. Alpers then made a motion with his left hand indicating he would pull over. Once the Trooper slowed behind him, Alpers rapidly accelerated away from him. A pursuit ensued, with Alpers reaching speeds over 140 miles per hour, weaving through traffic, and driving on the wrong side of the road. After a few minutes, Alpers's motorcycle experienced a mechanical failure, veered into a ditch, and rolled over.

The Trooper handcuffed Alpers, patted him down for weapons, and a Polk County Sheriff's Deputy who arrived on the scene to assist subsequently searched Alpers's pockets. The deputy located a pouch containing methamphetamine. A grand jury indicted Alpers for possession of a controlled substance in an amount greater than four grams but less than 200 hundred grams and for evading arrest.

Prior to voir dire, Alpers's counsel relayed to the trial court that she had concerns about her client's competency. The following exchange took place between the trial court and defense counsel:

> [COUNSEL]: This is the first time that competency has arisen, the first time he has advised me that he is unable to understand why this has all happened to him. He believes it's some sort of conspiracy.
>
> He has been going through a lot. He's had two houses burn down, a wife cheat on him, all these things happening. He thinks he's having some sort of breakdown, and he doesn't know what's happening to him. For that reason, I felt like it was my duty to raise it.
>
> THE COURT: Have your -- your conversations you've had with him, has he understood those? Have you had any reason to believe that he has not understood what you've told -- what you have talked with him about?
>
> [COUNSEL]: Yes.
>
> THE COURT: What is that?
>
> [COUNSEL]: I have explained to him the consequences of a jury trial and possibility of sentencing, and he tells me that that's not what the law is. He tells me that that is not the law. He says under the law he's entitled to probation. When I try to explain to him the law, he says no, that's not what the law –
>
> THE COURT: Disagreeing with you is not not understanding. So does he disagree with you or not understand?
>
> [COUNSEL]: I believe he doesn't understand the law, and so that's a disagreement, I guess. I'm an attorney, and when I try to explain to him that I'm an attorney and I know what the law is and look up the law, he was, like, no. He said, "No, that's not right."
>
> THE COURT: Does he understand your role in the proceedings?

[COUNSEL]: Yes.

THE COURT: Does he understand Mr. Wills' role in the proceedings?

[COUNSEL]: Yes.

THE COURT: Does he understanding my role in the proceedings?

[COUNSEL]: He's advised me that your cousin came to him and advised him that you would take $25,000 and give him probation.

THE COURT: Does he understand my role in the proceedings?

[COUNSEL]: I don't believe so. I believe he's completely confused.

THE COURT: Does he understand the jury -- how is he completely confused if he understands what you do and what he does?

[COUNSEL]: I've explained what I do and let him meet with the DA, and the DA has tried to explain what he does. But even the DA said his stories were conflicting and that it doesn't -- he doesn't seem to –

THE COURT: Conflicting stories doesn't get you to competency. What leads you to believe he is not competent to stand trial?

[COUNSEL]: He doesn't understand the severity of his case, and he keeps –

THE COURT: What leads you to believe he doesn't understand how the court system works? Severity and understanding, that kind of stuff does not get you to competency.

[COUNSEL]: Okay. He leads me to believe that he does not -- he disagrees with me. Like you said, does he disagree or does he not understand?

If he disagrees, he obviously doesn't understand, I feel like, because I'm an attorney; and I've told him, no, this is the law. And he is belligerent and argumentative and does not believe me and thinks

4

there's a conspiracy against us, between all of us, including me and including you.

After this exchange, the trial judge swore in Alpers and his mother and questioned them. Alpers testified as follows:

THE COURT: Do you understand that in Cause No. 25,958 you're charged with evading arrest with a vehicle, which is a third-degree felony? Do you understand?

THE DEFENDANT: Not really.

THE COURT: What do you not understand?

THE DEFENDANT: That -- that -- that --they was fixing to run me over.

THE COURT: I'm not asking about the facts of the case.
      Do you understand what you have been charged with? I'm not asking if you agree or disagree with what you've been charged with, just do you understand the nature of the charge.

THE DEFENDANT: No, I do not.

THE COURT: What do you not understand?

THE DEFENDANT: I've never been in trouble with the law, never.

THE COURT: What do you --

THE DEFENDANT: So I don't understand what I did wrong.

THE COURT: Listen to my question. Do you understand what evading arrest is?

THE DEFENDANT: No.

5

THE COURT: What do you think it is?

THE DEFENDANT: I'm not sure. I wasn't evading arrest.

THE COURT: Then if you don't know what it is, how do you know you weren't doing it?

THE DEFENDANT: Because I wasn't trying not to get arrested. I was trying to save my own life.

THE COURT: Do you understand that you have been charged and alleged that on or about April 10th of 2017 you fled, using a vehicle, from an officer and knew that he was an officer?

That's just – I'm asking if you understand what they're saying. I'm not asking if you did or didn't do it. Do you understand that's what they're saying you did?

THE DEFENDANT: Yeah, that's what they're saying I did.

THE COURT: And you understand that's what they're saying you did? I'm not asking whether you did it or did not do it.

Do you understand that's what the indictment alleges?

THE DEFENDANT: No, I don't.

THE COURT: What do you not understand?

THE DEFENDANT: I mean, he said -- one time they said I was street racing. So was I street racing? There was another motorcycle that got arrested with me.

THE COURT: Mr. Alpers, once again, we're not talking about the facts of the case. I'm asking whether or not you understand what they're saying you did.

THE DEFENDANT: Apparently, I don't. I mean, apparently, I don't understand.

6

THE COURT: Do you understand that in that cause number, a third-degree felony, you're facing not less than two and no more than ten years in prison with a fine not to exceed $10,000 or probation for up to ten years? Do you understand that is the full range of punishment for this offense?

THE DEFENDANT: Okay.

THE COURT: Do you understand that?

THE DEFENDANT: No, not really.

THE COURT: What do you not understand about that?

THE DEFENDANT: I mean, I don't get it. I've never been in trouble with the law, so I don't know nothing about it.

THE COURT: Do you understand the question I just asked you? That's all I'm asking.

THE DEFENDANT: No, ma'am, I don't.

. . .

THE COURT: And in Cause No. 25,959, you're charged with possession of a controlled substance in that on or about that same day you intentionally or knowingly possessed a controlled substance of methamphetamine of more than four grams but less than 200 grams, which is a second-degree felony. The full range of punishment for a second-degree felony is not less than two and no more than 20 years confinement in the Institutional Division of the Texas Department of Criminal Justice with a fine not to exceed $10,000 or probation for up to ten years.

Do you understand the full range of punishment for that offense? Do you understand that is what could happen to you if you're found guilty of this charge?

THE DEFENDANT: I don't – I'm not sure.

7

THE COURT: What are you not sure about?

THE DEFENDANT: I got a second-grade reading level.

THE COURT: I'm not asking you to read anything. Do you understand the question I asked you?

THE DEFENDANT: No, not really.

THE COURT: Why do you not -- what do you not understand?

THE DEFENDANT: Because I'm dyslexic.

THE COURT: What do you not understand about the range of punishment?

THE DEFENDANT: I mean, I'm not sure.

THE COURT: You have to be able -- I have to understand what you don't understand.

THE DEFENDANT: I mean, I'm not – I'm not a criminal. I've helped everybody I possibly could.

. . .

THE COURT: What do you not understand about the full range of punishment?
Do you understand that if you're found guilty, you could go to prison?

THE DEFENDANT: Yeah, I guess.

THE COURT: And do you understand that there is a possibility, depending on your criminal history, if any, you could be eligible for probation in these cases? Do you understand that?

8

THE DEFENDANT: I would like to think so, but they're telling me I'm not eligible for probation.

. . .

THE COURT: Do you understand that [your attorney's] role in the case is to ask questions of the witnesses, if needed, and to argue on your behalf? Do you understand that?

THE DEFENDANT: No.

THE COURT: When did you stop understanding that?

THE DEFENDANT: I never did.

THE COURT: Do you have any diagnosed mental condition?

THE DEFENDANT: Just special ed, reading assessments and stuff like that.

THE COURT: You said earlier you're dyslexic. Is that correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you have any other diagnosed condition?

THE DEFENDANT: I've never been checked for anything. I've got some mental -- mentally retarded uncles and stuff that can't talk or walk or none of that, no.

. . .

THE COURT: Are you capable -- if you were able to drive, could you go to the grocery store by yourself, run errands, things like that?

THE DEFENDANT: No, probably not.

THE COURT: Why?

9

THE DEFENDANT: I get lost in time. Like I say, I'm going to the store or something, and it will take me all day or just ... I mean, I've just let – I mean, I don't know.

Following the court's questioning, Alpers's counsel questioned him.

[COUNSEL]: And in this case, isn't it true that you believe that you were shot at by the police during the chase?

[ALPERS]: That bike was shot. It wasn't a mechanical failure.

. . .

[COUNSEL]: Do you understand why you're in court today?

[ALPERS]: Yeah. I mean, there's –

Defense counsel also questioned Alpers's mother during the hearing. She testified as follows:

[COUNSEL]: What's happened?

[MOTHER]: He just forgets where he's at and what he's doing. You tell him to go to the store and get something, and he'll call me back and ask what I sent him for.

[COUNSEL]: And what do you believe has caused this? Do you think there's something wrong with him? Has he been to the doctor?

[MOTHER]: No, he's not been to the doctor.

[COUNSEL]: Have you recommended he go see a doctor?

[MOTHER]: Yeah, we all have.

[COUNSEL]: Why hasn't he gone?

10

[MOTHER]: I don't know. We haven't got no money, I guess.

[COUNSEL]: And have you -- have you seen him – since we've been preparing for this trial, have you seen his behavior or his anxiety become greater?

[MOTHER]: Yes.

[COUNSEL]: What kind of things have you seen?

[MOTHER]: Just real mad real easy. His wife gives him a lot of problems.

. . .

[COUNSEL]: Do you believe that he understands why he is here?

[MOTHER]: I don't think so.

[COUNSEL]: Do you believe that he understands what my job is?

[MOTHER]: I don't think so. Not all of it.

[COUNSEL]: Do you think he understands the job of the judge?

[MOTHER]: I don't think so. Not all of it.

[COUNSEL]: Why do you feel this way? What kind of things has he said or done to make you feel like he doesn't understand?

[MOTHER]: Well, I think he's got a lot of mood swings and stuff like that. Disposition changes.

[COUNSEL]: But has he said anything to you that doesn't sound reasonable or clear regarding his trial?

[MOTHER]: He just talks that he's going to kill his self and he's going to do this and do that.

11

[COUNSEL]: He has threatened suicide?

[MOTHER]: Yes.

[COUNSEL]: When was the last time he threatened suicide?

[MOTHER]: I don't remember.

[COUNSEL]: Was it within the last month?

[MOTHER]: I don't remember.

…

[COUNSEL]: And were the behaviors similar to the symptoms that you saw in his brother before he committed suicide?

[MOTHER]: Yes.

[COUNSEL]: Can you give me an example?

[MOTHER]: Was mood swings high and low and gets mad really, really easy.

[COUNSEL]: Does he seem to understand right from wrong?

[MOTHER]: No. I don't think so.

[COUNSEL]: Can you give me an example of that?

[MOTHER]: Well, when you try to tell him something, he don't know.

…

[COUNSEL]: Do you have concerns that he does not understand this proceeding?

12

[MOTHER]: Yes.

[COUNSEL]: Do you feel like he needs to be evaluated by a licensed psychiatrist --

[MOTHER]: Yes.

[COUNSEL]: -- to make sure that he understands what's going on?

[MOTHER]: Yes.

…

THE COURT: The motion for examination for competency is denied.

Alpers filed a motion for competency evaluation two days after the above-described hearing supported by defense counsel's affidavit, but the trial court also entered an order denying the request for a professional evaluation of Alpers's competency. The trial court's order provided that "[a]fter considering the testimony provided and the arguments of counsel, the Court is of the opinion that there is no evidence to support the order for a professional evaluation of Defendant's competency, or to find Defendant incompetent to stand trial."

The trial proceeded, and the jury convicted Alpers of the offenses of possession of a controlled substance and evading arrest. The trial court assessed punishments of seven years of confinement for each offense to run concurrently.

13

## Standard of Review

We review a trial court's decision to deny a request for a competency examination for an abuse of discretion. *See Bigby v. State*, 892 S.W.2d 864, 885 (Tex. Crim. App. 1994). We also review a trial court's decision denying a competency hearing for an abuse of discretion. *See Moore v. State*, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999). A trial court abuses its discretion if it acts arbitrarily or unreasonably or without reference to any guiding rules and principles. *See Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (citations omitted). We give great deference to the trial court's first-hand assessment of a defendant's ability to assist counsel and his understanding of the proceedings. *See McDaniel v. State*, 98 S.W.3d 704, 713 (Tex. Crim. App. 2003); *see also Ross v. State*, 133 S.W.3d 618, 627 (Tex. Crim. App. 2004).

## Analysis

Constitutional due process prohibits an incompetent criminal defendant from standing trial. *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018); *Turner v. State*, 422 S.W.3d 676, 688 (Tex. Crim. App. 2013). A defendant is presumed to be competent to stand trial until proven otherwise by a preponderance of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 46B.003(b); *Hobbs v. State*, 359 S.W.3d 919, 924 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The Legislature

14

has determined that a defendant's incompetency to stand trial is established if he does not have: "(1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person." Tex. Code Crim. Proc. Ann. art. 46B.003(a); *Boyett*, 545 S.W.3d at 563. In making a competency determination, trial courts employ a two-step process: (1) an informal inquiry; and (2) a formal competency trial. *Boyett*, 545 S.W.3d at 563.

During the informal inquiry, if there is "some evidence from any source that would support a finding that the defendant may be incompetent to stand trial" then the trial court must order a psychiatric or psychological competency examination, and, absent certain exceptions, a formal competency trial. *Id.* (quoting Tex. Code Crim. Proc. Ann. art. 46B.004(c)). Regarding the evidentiary standard at the informal inquiry stage, we focus on three things: (1) whether there is "some evidence" of incompetency to stand trial; (2) consider only the evidence of incompetency without weighing any evidence of competency; and (3) whether "some evidence" has been presented showing the defendant's mental illness is the source of his inability to participate in his defense. *Id.* at 563–64; *see also* Tex. Code Crim. Proc. Ann. art. 46B.004(c); *Turner*, 422 S.W.3d at 692, 696.

In *Boyett*, the Court of Criminal Appeals explained that it "is not enough to present evidence of either a defendant's mental illness alone or his refusal to cooperate with counsel—rather, there must be some evidence indicating that the defendant's refusal to rationally engage with counsel is caused by his mental illness." *Boyett*, 545 S.W.3d at 564. Likewise, it is not enough that

> there is some evidence of 1) mental illness without accompanying evidence from which one may reasonably infer that the defendant's mental illness renders him incapable of consulting rationally with counsel, 2) refusal to cooperate with counsel without evidence that the obstinance is fueled by mental illness, or 3) mental illness and obstinance but no rational basis to infer that the latter is the product of the former.

*Britton v. State*, No. 07-18-00359-CR, 2019 WL 2282149, at *3 (Tex. App.—Amarillo May 21, 2019, no pet.) (mem. op., not designated for pub.) (citing *Turner*, 422 S.W.3d at 696).

Evidence established that Alpers disagreed with his attorney's assessment of his probation eligibility and the State's factual version of events; however, disagreement does not equate to a refusal to rationally engage with counsel. *See, e.g., Clark v. State*, No. 05-18-00944-CR, 2020 WL 1502731, at *3 (Tex. App.—Dallas Mar. 30, 2020, no pet. h.) (mem. op., not designated for pub.) (noting counsel never said defendant was unable to consult with him, only that defendant was difficult, which was insufficient to trigger additional assessment). Information necessary to

16

raise the issue of incompetency must be specific and illustrate counsel's present inability to communicate with the defendant; unspecified difficulties in communicating with the defendant are insufficient. *Reed v. State*, 112 S.W.3d 706, 710 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). Although counsel noted that Alpers did not agree and averred generally in her affidavit that "[i]t has been very difficult to prepare my client for trial because of these issues[,]" counsel did not provide specific examples concerning how Alpers was unable to assist her. *See id.* Likewise, his mother's generalized testimony that Alpers did not understand the proceedings offered no basis for why she harbored that belief or what behaviors he exhibited that led her to believe he did not understand. While some testimony was presented from which a court could infer Alpers might suffer from an undiagnosed mental illness, the record was devoid of any evidence from which one could reasonably infer that mental illness fueled a refusal by Alpers to rationally engage with counsel. *See Boyett*, 545 S.W.3d at 564. Therefore, the trial court did not abuse its discretion in denying an expert competency evaluation. We overrule Alpers's issue on appeal.

## Conclusion

Having overruled Alpers's sole issue, we affirm the trial court's judgments.

17

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on February 18, 2020
Opinion Delivered April 15, 2020
Do Not Publish

Before Kreger, Horton and Johnson, JJ.